## ARKANSAS NATIONAL BANK *v.* BOLES.

### Opinion delivered December 12, 1910.

1. ESTOPPEL—CERTAINTY.—Before an estoppel can be raised, there must be certainty to every intent; the facts alleged to constitute it are not to be taken by argument or inference. (Page 48.)
2. SAME—INTENT TO DECEIVE.—Equitable estoppel, being merely an instance of fraud, requires intentional deceit or at least that gross negligence which is evidence of an intent to deceive. (Page 49.)

Appeal from Washington Chancery Court; *T. Haden Humphreys,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

On the 28th day of April, 1908, C. P. Boles and his wife executed to appellant a mortgage on lot one, block one, in the town of Fayetteville, to secure the following indebtedness, to-wit: one note of even date for $1,250, one note dated April 24, 1908, for $1,250, and other notes indorsed by C. P. Boles, which latter amounted to $9,162.82. The lot described was the residence or home place of Boles and wife, the mortgagors. On February 2, 1909, C. P. Boles and wife executed to John R. Harris as trustee for the First National Bank of Fayetteville, a mortgage on the lot above mentioned to secure the First Na-

tional Bank for a loan of $1,000, evidenced by note of that date.

Harris testified that C. P. Boles and Ashley Boles, his son, wanted to borrow $1,000 from the bank he represented, and wanted to secure it by a mortgage on the home place. He asked them what was against the home place. They mentioned, among others, a note to the appellant for $1,250. Witness then asked Boles to get a statement from the Arkansas National Bank (appellant) of his indebtedness, and how much was secured. Boles went at once to appellant and returned with the following statement written on the stationery of the Arkansas National Bank:

"Note April 28, 1908................$1,250.00 Sec. Residence
  "       "    22,   "   ................ 1,250.00        40 acres
  "       Bal.       ................ 1,350.00
  "Indorsed, E. Pitkin and Ellis Duncan."

He relied upon the above statement as to the extent of the incumbrance on the "home place," and loaned Boles the $1,000; would not have loaned the $1,000 but for the statement. If he had known that appellant had a lien on lot one for $1,250, and the further sum of $9,162.82 or any other sum in addition to the $1,250, which he understood was represented by note of April 28, 1908, he would not have loaned Boles the $1,000.

Ashley Boles testified: "I was at the First National Bank of Fayetteville about the 2d of February, 1909, when an application was made by my father for a loan of $1,000. Mr. Harris asked us to go to the Arkansas National Bank, and find out how much we owed it; just a general statement of what we owed on the home and mountain places. In compliance with the request, my father and I went immediately to the Arkansas National Bank, and let Mr. Morton know that we were on a deal with Mr. Harris. We told him that we were on a deal with Mr. Harris, or figuring with him, and asked him this: 'Just give us a statement, Mr. Morton, of what we owe and what it is secured by.' He turned around to the books—he was back in the vice president's office—and wrote us out a statement. After we got the statement, we took it back to Mr. Harris and gave it to him; and after that the note and mortgage were given."

C. P. Boles testified: "I think I told Mr. Morton that

Mr. Harris was not satisfied with my statement, and wanted him to make a statement of the notes we owed, the date, and how secured; and he gave us in return that little statement there which was then three notes, which were secured as this has them there. I took the statement, and went and showed it to Mr. Harris. This statement was for the purpose of showing Mr. Harris how much our property was incumbered. The $1,000 was put to my credit in the bank. No part of the same has been paid except the amount credited."

The statement referred to by these witnesses is that set out above:

W. H. Morton testified: "I am cashier of the Arkansas National Bank, and was vice president in April, 1908. Boles was in arrears to both our bank and the First National Bank. I did not know to what extent, or what amount, but I knew of the fact. The statement alluded to by Harris and the Boles was made by me, and was made at the bank and upon bank stationery. I have no recollection as to when the statement was prepared. My recollection is, Mr. Boles asked for a statement. Mr. Boles said he was on another deal. During the period from July, 1907—the organization of the Arkansas National Bank—up to February, 1909, I knew that the First National Bank of Fayetteville was also advancing money to Boles and to the wagon company for the same reason that our bank was doing so. Boles was in arrears both at our bank and at the First National Bank." He further testified that he had no recollection of the figuring in the statement; that Mr. Boles had not called upon him for a statement to be furnished to any one else; that he did not make these figures to enable him to obtain the loan; that he had no knowledge of his negotiations for a loan; that he often called for statements on his own account, and that these notes were designated in this way.

The president of the bank also testified that Boles often called for these statements, and that these notes were designated in this way; that he had no knowledge of the procurement of any loan from the First National Bank.

The appellant sued Boles and wife, and made Harris, trustee for the First National Bank, and others parties. The complaint set up the various notes mentioned in mortgage of April 28,

1908, alleged that the two notes for $1,250 each were due and unpaid, and that the sum of $704.62 remained due and unpaid upon the notes indorsed by C. P. Boles, with 10 per cent. interest on the whole. It alleged that Harris, as trustee for the First National Bank of Fayetteville, claimed to have a mortgage on lot one in block one described in appellant's mortgage. The prayer was for judgment for all the indebtedness due by Boles, and that the First National Bank and others be required to interplead or answer and show what interest they had in the lots included in appellant's mortgage, and that the lots be sold to satisfy appellant's debt.

Harris, as trustee for the First National Bank of Fayetteville, answered, setting up that appellant was estopped by its representations contained in statement above set forth from asserting that its mortgage was superior to that of Harris, trustee, except as to the $1,250 note of April 28, 1908.

Harris prayed that the mortgage held by him as trustee be declared to give him a superior lien to that of appellant except for the $1,250 note of April 28, 1908. The above, in substance, are the facts. The decree of the lower court was as follows:

"That the plaintiff recover the sum of $1,459 on note of April 28, 1908, the sum of $1,461.45 on the note of April 22, 1908, and the sum of $611.82 on the notes indorsed by C. P. Boles and the further sum of $1,551.45 on the note indorsed by Boles, Duncan and Pitkin, and that all of said sums bear interest from date until paid at the rate of 10 per cent. per annum; that the property be sold; that the proceeds be applied first to pay the sum of $1,459 due on the note of April 28, 1908, and interest to time of payment; that after the satisfaction of said sum the commissioner pay the proceeds from sale of lot one to J. R. Harris, trustee, for sum of $656.15 and interest at the rate of 8 per cent. per annum, which sum is apportioned to said bank as being a prior lien of the Arkansas National Bank on account of said First National Bank being estopped as to other claims named.

*B. R. Davidson,* for appellant.

Appellant would not be estopped by any statement made by Morton to Boles, as no business transaction was pending

with appellant bank at the time of the alleged statement.    83 Fed. 725; *Id.* 727, and authorities cited; 54 Ark. 467.

Any statements made by Boles to Harris concerning the written statement were *res inter alios actae,* would not be binding on appellant, nor warrant Harris in acting upon them.    17 Wall. 32, 43; 16 Cyc. 734, 739.    The statement, to create an estoppel, must be certain to every intent, and nothing is taken by inference or intendment."    16 Cyc. 748; 135 Fed. 750. Estoppel shuts out the truth, and must be made out strictly. 83 Fed. 733.    There must exist a motive.    *Id.* 737.    There must have been a false representation or fraudulent concealment of a material fact, and the party furnishing the statement must have had knowledge of the purpose of the inquiry, and have given it intending that it be acted on.    16 Cyc. 726, 732; 53 Ark. 196 *et seq.;* 54 Ark. 508; 48 Ark. 426, *et seq.*; 18 Wall. 255-271; 117 U. S. 567, 580; 2 Pomeroy, Eq. § § 686-688; 89 Ark. 349, 353; 93 U. S. 335.

The party to whom the statement is made must be without knowledge or means of knowing the real facts.    189 U. S. 260; 2 Pomeroy, Eq., § 807; 93 U. S. 326.    And the party pleading estoppel must prove that he has been misled to his damage.    16 Cyc. 726, 749; 80 Ark. 409.

*Walker & Walker,* for appellee.

Appellant is estopped by its representations to appellee. Estoppel by misrepresentation, or equitable estoppel, arises when one by his acts, representations or admissions, or by his silence when he ought to speak, intentionally or by culpable negligence induces another to believe certain facts to exist, and the other in good faith relies and acts on such belief to his own prejudice.    16 Cyc. 722-3; *Id.* 728; 33 Ark. 465.    It is sufficient if the acts, representations, or the silence are of such character as to induce a reasonable and prudent man to believe that they were meant to be relied upon.    16 Cyc. 726; 70 Am. Dec. 647; 113 Ill. 283; 93 Ind. 570; 4 Minn. 217; 73 Mo. 310; 94 N. W. 109; 117 U. S. 96.    The record of appellant's mortgages, while *prima facie* notice,    does not prevent Harris from maintaining appellant's estoppel in this case, because he had no *actual* notice of their existence,

and appellant's representation through Morton caused him to desist from inquiring. 55 Ark. 296; 47 Ark. 335; Bigelow on Estoppel, 627; 93 Ind. 480; 103 Mass. 501; 38 Mo. 55; 58 Miss. 30; 19 Minn. 32.

WOOD, J., (after stating the facts). If appellant is estopped, it is because of the alleged representation of its vice president, Morton, made in the written statement in evidence. According to the testimony, Harris, trustee for the First National Bank of Fayetteville, requested Boles to get a statement of the amount that Boles was due it on the "home" and "mountain" places. Boles communicated this request to Morton, telling him that he was on a deal with Harris, and that Harris wanted the information. Morton made the statement in compliance with such request. Conceding that the statement was such a representation as under the circumstances would estop appellant from asserting any claims contrary to what was contained in the statement, still the statement shows that there was a "bal. $1,350 indorsed E. Pitkin and Elias Duncan." But it does not show whether this amount was secured by mortgage on the "home" place or the "mountain" place. It must have been secured by one or the other. For Morton was requested to give Harris a statement of what was due by Boles "on the home and mountain places," or, in another form, a "statement of what we owe and what it is secured by." Now, who can tell from the above statement whether the balance of $1,350 was secured by the "home" place or the "mountain" place? From the request made of Morton to show what was due on the "home" and "mountain" places, or to show what was due and how secured, the statement must have been intended to show that this sum was due and secured by mortgage on one or the other of these places. It could not reasonably be inferred that this sum of $1,350 was not secured, for the request was to show how the amount due was secured. Harris was not interested in any amounts that were not secured. What right had Harris, as trustee, to assume that the amount of $1,350 was secured by the "mountain" place, and not by the "home" place, or that it was not secured? None whatever.

The statement was too indefinite to constitute an estoppel against appellant as to the balance of $1,350 mentioned therein.

According to the testimony, it was intended by the statement to give Harris notice that the amounts named were due appellant and were secured by mortgage either on the "home" place or the "mountain" place. The statement, being too indefinite to indicate which of the places was meant, could not constitute an estoppel against appellant. It was not shown that Harris, before making the loan, took any steps to have the statement or representation made more definite. This he might easily have done by consulting the record of mortgages. Of course, any statement that Boles made to him concerning this statement and what it was intended to represent could not bind appellant. All such statements would be *res inter alios actae* as to appellant, for Boles in securing the statement was representing Harris and not appellant.

"Before an estoppel can be raised, there must be certainty to every intent. The facts alleged to constitute it are not to be taken by argument or inference. 16 Cyc. and numerous cases cited in note. As estoppel bars the truth to the contrary, the party setting it up must prove it strictly. Nothing can be supplied by intendment. *First Nat. Bank* v. *Marshall & Ilsley Bank,* 65 N. W. 604, and cases cited; *First Nat. Bank* v. *Marshall & Ilsley Bank,* 83 Fed. 725, 34.

The evidence does not warrant the conclusion that appellant, through its vice president, Morton, intended by its statement to deceive Harris, and make him believe that appellant had no lien on lot 1, block 1, in the city of Fayetteville, for the sum of $1,350. The most reasonable inference from the statement, taken in connection with the other evidence, is to the contrary. Nor does the evidence warrant the conclusion that Morton was so grossly negligent in making the statement in the loose form given as to indicate an intention on his part to mislead and deceive Harris.

The statement was made rather to accommodate Boles and Harris, than otherwise, and was not in regard to any transaction in which appellant was interested. "This equity" (estoppel), "being merely an instance of fraud, requires intentional deceit, or at least that gross negligence which is evidence of an intent to deceive." 2 Pom. Eq. Jur., § 807, note, citing numerous cases. See *Jowers* v. *Phelps,* 33 Ark 465.

The judgment is therefore reversed, and the cause is remanded with directions to enter a decree in favor of appellant in accordance with this opinion.