RANTIS *v.* MICHICAGO MOTOR EXPRESS, INC.

1. MASTER AND SERVANT—RIGHT TO CONTROL.

   A servant ceases for the time to be the servant of his original master and becomes the servant of the party to whom he is hired or lent, where the original master hires or lends the servant to another for some particular work and resigns full control over him while performing that work.

2. WORKMEN'S COMPENSATION—INJURY TO SERVANT WHILE LOANED TO ANOTHER—CONTROL.

   An original master who has hired or loaned his servant to another must have resigned full control to the other in order to be relieved from liability under the workmen's compensation act for injuries sustained while working for the other party.

3. SAME—CONTROL OF EMPLOYEE OPERATING LEASED TRUCK.

   Workmen's compensation commission's finding that defendant owner of truck, leased to defendant lessee, had not relinquished control over deceased in the operation in which he was engaged when killed was supported by competent evidence that control of the deceased remained in defendant truck owner, where deceased continued on the owner's payroll, owner was responsible for collections from the consignee and for loss, damage or delay in shipment as well as for maintenance of the truck in good condition and for its legal operation.

Appeal from Workmen's Compensation Commission. Submitted January 10, 1952. (Docket No. 29, Calendar No. 45,180.) Decided April 7, 1952. Rehearing denied May 16, 1952.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 35 Am Jur, Master and Servant § 18.
[2, 3] 58 Am Jur, Workmen's Compensation § 343.
[2, 3] Workmen's compensation: Liability of general or special employer for compensation to injured employee. 3 ALR 1181; 34 ALR 768; 58 ALR 1467; 152 ALR 816.

Peggy Rantis presented her claim for compensation arising out of death of her husband against Michicago Motor Express, Inc., and Craig Trucking, Inc., employers. Award to plaintiff against Michicago Motor Express, Inc. This defendant appeals. Plaintiff cross-appeals. Affirmed.

*Gore & Williams,* for plaintiff.

*Troff, McKessy & Lilly (Laurence T. Uridge,* of counsel), for defendant Michicago Motor Express, Inc.

*L. J. Carey* and *Geo. J. Cooper (Bruce W. Griffin,* of counsel), for defendant Craig Trucking, Inc.

DETHMERS, J. Deceased, employed as a truck driver by defendant, Michicago Motor Express, Inc., upon being so directed by his father-in-law, Nick Katsulos [Kitsulos?], president and sole owner, with his wife, of Michicago, took a load of produce from Benton Harbor, Michigan, to Pittsburgh, Pennsylvania, in a truck owned by Katsulos and by him leased to and operated by Michicago. At the same time, a son of Katsulos, also employed by Michicago, drove another truckload of produce to Pittsburgh with instructions from his father to get a return load, if possible. Deceased had received no specific instructions to that effect in connection with this trip, but previously had received general instructions from Katsulos to secure return loads whenever possible. Michicago had no Interstate Commerce Commission (I.C.C.) permit to operate over the routes in question, none being required for hauling produce. In Pittsburgh deceased and young Katsulos learned from a representative of defendant Craig Trucking, Inc., that they could secure return loads of bottles which Craig had engaged to transport from the ship-

per in Glenshaw, Pennsylvania, to Detroit, Michigan. Deceased and young Katsulos picked up the bottles at Glenshaw and returned to Pittsburgh. For the transportation of the bottles to Detroit an I.C.C. permit was required but not possessed by Michicago. Consequently, they then leased the trucks being driven by them to Craig, which held such permits, and surrendered the bills of lading received from the shipper to the Craig representative, who made out original freight bills on Craig billheads. The leased equipment agreement in favor of Craig read in part as follows:

"(1) WITNESSETH: The lessee does by the execution hereof lease from the lessor, for the use in the common carriage of goods, wares and merchandise in interstate traffic, the following described tractor and trailer: * * * Which lessor hereby warrants to be in good and serviceable condition and running order, for a one-way trip from Glenshaw to Detroit * * * at and for the following considerations:

"For the complete possession, control and supervision of the equipment hereby leased and for the physical operation of said equipment (wages), on the following terms:

"70% of gross or flat rate ............$114.52
"Less advance ...................... 40.00
"Pay ............................... 74.52

"INSTRUCTIONS:  ..

"Includes pick up and delivery.

"Turn in log sheets with lease for payment.

"Physical examination on file with Roadway Express, Akron.

"(2) The complete possession, control and supervision of the equipment hereby leased is meant to be, and by the execution of this instrument is vested in the lessee, and it is hereby agreed that the physical operation of such equipment shall be conducted only

by the employees of the lessee during the period of this lease.

"(3) This agreement shall be in force until the completion of trip as designated in article number (1) and settlement of manifest or manifests. By settlement of manifest or manifests is meant the complete clearing of same, by the surrender of properly receipted freight bills accepted by the consignee without exception as to loss, damage or delay, together with payment of all moneys due and/or owing lessee as designated on said freight bills and manifest or manifests. * * *

"(5) Lessor hereby agrees to maintain his equipment in good and efficient working order, observe all safety and other requirements of the Interstate Commerce Commission and all other regulatory bodies having jurisdiction and to pay all fines due to overload, over-length, overweight, lack of permits and plates, speeding and other fines which may be assessed against him for failure to live up to rules and regulations of the Interstate Commerce Commission and other regulatory bodies having jurisdiction."

Craig's representative furnished deceased with an instruction sheet which contained the district and territorial boundaries of Craig, territorial instructions for telephoning, instructions to drivers to read travel orders, to check trailer numbers, permit no riders, to watch their speed, to turn in log sheets, report on accidents, and instructions as to where gasoline and oil might be charged to Craig. Craig's representative also instructed deceased where to deliver the cargo in Detroit. While en route to Detroit deceased was accidentally killed.

From an award of compensation to plaintiff against Michicago and its insurer, Auto-Owners Insurance Company, the latter appeals, contending that at the time of injury deceased was in the employ of

Craig. They urge that under the leasing agreement deceased became an employee of Craig, that he was performing work for Craig, that Craig had the full power to control that work and the deceased in the performance thereof, and that Michicago's control over him had ceased.

In holding deceased still an employee of Michicago, when injured, the workmen's compensation commission pointed to the fact that the agreement did not provide that deceased was to become Craig's employee, that there was no showing that Craig hired or paid wages to deceased or that Michicago relinquished its control over deceased to Craig or that deceased submitted himself to Craig's control, but that, on the contrary, he continued on Michicago's payroll; further, that the provisions in the lease agreement that lessor was responsible for collections from the consignee and for loss, damage or delay in shipment as well as for maintenance of the truck in good condition and for operating the truck in accord with I.C.C. regulations and for payment of fines for violations by the operator, are all inconsistent with the idea that Michicago had relinquished control over the truck and particularly over the deceased; and, finally, that the lease arrangement was manifestly a sham to enable Michicago to carry the load to Detroit as its own operation under the protection of Craig's I.C.C. permit. Craig contends that even though its representative gave deceased some specific directions for the trip Michicago did not yield its over-all direction and control over him and that, accordingly, the deceased continued to be its employee within the meaning of the workmen's compensation act, quoting in support thereof from the case of *Rockwell* v. *Grand Trunk Western Railway Co.*, 253 Mich 144, the following:

"It is a well-settled rule of law that when one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent. In determining whose servant he was the test is, who had the right to control him. In 18 RCL, p 784, § 244, it is stated:

" 'But to avoid liability the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of another.' * * *

"In *W. S. Quinby Co.* v. *Estey,* 221 Mass 56 (108 NE 908), it was said:

" 'The original master remains liable and the employee remains his agent, unless the authority to direct and control the servant in all the details of the transaction is surrendered to some other person, so that the business in which the servant is engaged is no longer the business of his general employer, but is in all respects the business of the person to whom he is sent.' * * *

" 'If the servant remains subject to the general orders of the man who hires and pays him, he is still his servant, although specific directions may be given him by another person from time to time as to the details of the work and the manner of doing it.' "

We think the commission's finding of fact that Michicago had not relinquished its control over deceased in the operation in which he was engaged when killed is amply supported by the evidence which leads to the conclusion, as a matter of law, that he was, at the time of injury, not in Craig's employ but in that of Michicago.

Affirmed, with costs to plaintiff and Craig.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.