LONG *v.* SIMS MOTOR TRANSPORT CO. ET AL.

[No. 18,442.   Filed February 8, 1954.  Rehearing denied March 31, 1954.  Transfer denied May 26, 1954.]

*William B. Weisell* and *Slaymaker, Locke & Reynolds,* of Indianapolis, for appellant.

*Crawford & Crawford,* of Terre Haute, for appellee Sims Motor Transport Lines, Inc., and *Stanley E. Stohr* and *Mann, Stohr & Mann,* of Terre Haute, for all other appellees.

KELLEY, J.—Appellees, excepting appellee, Sims Motor Transport Lines, are the heirs and dependents of Joseph J. Chandler, deceased. They filed application with the Industrial Board seeking an award of compensation against appellant and appellee, Sims Motor Transport Lines (hereinafter referred to as Sims). The Full Board found that said decedent, while in the employ of appellant and Sims, sustained fatal accidental injuries arising out of and in the course of his said employment and entered an award in favor of said applicants against said employers.

Appellant, alone, appeals from said award and assigns as error that the same is contrary to law. Appellee, Sims, prosecutes no appeal and abides by said award.

The basis of appellant's challenge of the award, as stated by him, is that: "The uncontroverted evidence requires the single inference that decedent was not the employee of appellant . . . at the time of the accident resulting in his death." Our only task, then, is to determine whether the uncontroverted evidence and the reasonable inferences permissible therefrom, as disclosed by the record before us, sustains the finding of the Board that the decedent at the time of the unfortunate occurrence was in the employ of appellant.

The direct evidence establishes the following facts: The appellant leased his tractor and trailer (hereinafter referred to as equipment) to Sims under what is described as a written "trip lease" for the purpose of hauling stone from Bloomington, Indiana, to Wichita, Kansas. Sims held the necessary Interstate Commerce Commission certificates required for such purpose. In addition to the leased equipment, appellant was required to furnish and bear the cost of a driver therefor and the furnished driver, before being permitted to operate the equipment, was required to meet with the approval of Sims, after submitting a written "Drivers Application." The cost of the maintenance and operation of the equipment and the wages of the driver were paid by appellant.

The agreed rental to be paid appellant for his equipment was 75% of the gross revenue on the load, less .5% to cover the premium due for the coverage of the driver under the Workmen's Compensation policy carried by Sims. Sims gave the orders where the load was to be picked up, the route to be followed and where the cargo was to be delivered. It also had the right to

remove and release a driver for violation of its rules or the I. C. C. regulations. If the driver encountered trouble along the route or was apprehended for some offense, Sims, in order to get the cargo through without undue delay, attended to the matter, advanced any fines and costs, and afterward secured reimbursement from appellant.

The written lease of the equipment provided that appellant agreed to "maintain his equipment in good and efficient working order, observe all safety and other requirements of the Interstate Commerce Commission and all other regulatory bodies having jurisdiction, and to pay all fines due to overload, overlength, lack of permits or plates, speeding and other fines which may be assessed against him for his failure to live up to such rules and regulations of the Interstate Commerce Commission and other regulatory bodies having jurisdiction." It further provided: "It is further understood and agreed that while the foregoing equipment is under the direction and control of Sims Motor Transport Lines, Inc. that *it shall be operated only by the lessor or his representative* while in the employ of Sims Motor Transport Lines, Inc." (Our emphasis)

The plaintiffs' (appellees') witness, G. B. Goode, Manager of Sims Motor Transport Terminal, testified that ". . . if Long decided to dispense with one of his drivers that would be up to him," and again, "If he (meaning the driver) was not satisfactory to the man that owned the equipment I would say nothing about it at all." Appellant testified that decedent was a driver of his equipment leased to Sims, that decedent averaged "$100.00 a week or just a fraction over," and that decedent "was an extra good driver." Appellant did not contradict the testimony of Mr. Goode. (The bracketed interpolations are ours.)

Some two and one-half months prior to the fatal accident, appellant recommended the decedent to Sims as a driver of appellant's equipment and the decedent was approved, in the usual manner, by Sims. On January 15, 1952, while driving appellant's equipment en route with said cargo of stone for Sims, the decedent sustained the accidental injuries resulting in his death.

From the direct evidence, including the testimony of Goode and appellant, and the written provision of the lease that the equipment should be operated only by appellant or his representative, the Board could reasonably have inferred not only that appellant retained the power to discharge the decedent or substitute another driver for him, but that the decedent considered himself an employee of appellant and subject to discharge by him.

There are other factors from which the Board could have concluded that the appellant possessed a substantial, but not necessarily exclusive, right and power of control of decedent and the means, manner, and method of his performance. Appellant's lease required him to maintain the equipment in efficient working order, observe safety regulations, pay fines, including overloads, overlengths, etc. These agreements, undertaken by appellant, carried with them, as a natural concomitant, the assumption of the ability of appellant to perform them. Unless appellant, himself, operated the equipment (which he did not) this ability would be practically non-existent unless there resided in appellant the power to direct, supervise, and control the driver and his manner of operating and caring for the equipment. Further, in view of the lease provision that the equipment could be operated only by appellant "or his representative," there appears little doubt that the appellant, not personally operating the equipment, could have declared at any time that the decedent was no

longer his representative, and thereby made it necessary for Sims to remove decedent from the equipment or deny him the right to continue in charge thereof.

The record discloses that Sims did not withhold from decedent any social security contributions or federal income tax and this is consistent, since the decedent's wages were paid by appellant. The Board could have properly and fairly inferred that any such contributions or tax required by law to be withheld from decedent's pay was so withheld by appellant.

Appellant very earnestly urges upon us the adoption of a rule of "full" control or "overall" control of the means, manner, and method of performance, and to that end that we overrule or modify the doctrine laid down in *Jackson Trucking Company, Inc.* v. *Interstate Motor Freight System* (1952), 122 Ind. App. 546, 104 N. E. 2d 575. However, we observe that the rules and tests laid down in the authorities as criteria for the determination of employee-employer relationship are not exclusive, but must be rationalized and applied so that each case may be considered and determined upon its own particular facts. The rules and tests are not so hard and fast and inexorable that they must be present and controlling *en masse* in every case before the employment relationship, as defined and contemplated by the statute, can be declared.

Appellant solicits, but we cannot approve his proposition, that "By the very nature of the requirement of the Indiana Act, . . . employment responsibility must be placed upon one employer only." We find nothing in the Workmen's Compensation Act which gives sustenance to that proposition nor to appellant's proffered concept that the act "requires the right in both or in all to exercise the *same* control over the whole."

It is obvious that the evidence adduced before the Board in this cause and to which we have herein adverted, does not, in all respects, establish "like" or the "same" control in appellant and Sims. However, in our opinion, the evidence is sufficient to demonstrate a mixed control, not necessarily complete in either, by appellant and Sims over the equipment, the driver, and the manner, means, and method of performance.

Appellant expresses great anxiety in his briefs concerning the broadening of the dual employer doctrine. But the law is not static. The courts and the law must keep abreast of the times and apply the appropriate legal principles to the ever-broadening and complex arrangements of modern life and business. We are not here broadening the rules applicable to dual employers. We simply apply established legal principles to a modern-day business arrangement or situation to the end that substantial justice will result.

The substantial evidence in this record and the reasonable inferences deductible therefrom, fully sustain the finding of the Board that the decedent was in the employ of appellant at the time of the accident causing his demise.

The award of the full Industrial Board was not contrary to law and the same is, therefore, hereby affirmed, with the usual statutory penalty.

NOTE.—Reported in 117 N. E. 2d 276.