PATRICK A. COLEMAN, plaintiff-appellee, v. RINGLE TRUCK LINES, INC., and HARTFORD ACCIDENT & INDEMNITY COMPANY, its insurance carrier, defendants-appellees; EWALD THIESE, HOWARD BLY and UNITED FIRE & CASUALTY COMPANY, their insurance carrier, appellants.

No. 49472.

(Reported in 91 N.W.2d 566)

JULY 28, 1958.

Herrick & Langdon, of Des Moines, for defendants-appellants Ewald Thiese, Howard Bly and United Fire & Casualty Company.

V. G. McSweeney, of Independence, for appellee.

Jordan, Jordan & Pence, of Cedar Rapids, for defendants-appellees, Ringle Truck Lines, Inc., and Hartford Accident & Indemnity Company.

OLIVER, J.—This case involves a claim for workmen's compensation for totally disabling injuries suffered by claimant April 4, 1955, while operating a tractor and semitrailer leased for one year, by defendants-appellants Bly and Thiese to defendant-appellee Ringle Truck Lines. The lease provided that Bly and Thiese operate the unit themselves or furnish competent employees for such purpose, and carry workmen's compensation insurance on any such driver and that the operation should be under the certificates of Ringle and over routes which Ringle was authorized to travel. Claimant was the driver furnished Ringle by Bly and Thiese, as required by the lease. At the time he was injured claimant was operating the unit in interstate commerce in the state of Ohio under the permit issued to Ringle by the Interstate Commerce Commission. Bly and Thiese had no such permit.

Claimant's injuries and his right to compensation therefor at no time have been in dispute. The only question was and is, whether lessors Bly and Thiese or lessee Ringle are liable for workmen's compensation as claimant's employer. The actual contest is between the insurers of these parties. The decision of the Industrial Commissioner in review states:

"The record shows without contradiction that Bly hired the claimant as a driver of the truck, directed his work, paid him his wages after deducting for social security and withholding for income taxes, and carried workmen's compensation insurance upon the claimant."

It affirmed the arbitration decision of the Deputy Industrial Commissioner awarding claimant compensation against Bly and Thiese. This decision was affirmed by the district court

and judgment against lessors Bly and Thiese and their insurer was rendered accordingly. From this judgment the lessors and their insurer have appealed.

I.  Appellants assign but one error or proposition for reversal:

"A common carrier operating under authority of its Interstate Commerce Commission permit, which requires it to have 'exclusive possession, control and use of the equipment and complete assumption of responsibility in respect thereto', as a matter of law is the employer of the driver when the equipment could only be lawfully operated under the common carrier's Interstate Commerce Commission permit; as between defendants-appellants and defendants-appellees, Ringle Truck Lines as a matter of law was the employer of plaintiff-appellee driver and had the duty, responsibility and liability to make any and all workmen's compensation payments; and the trial court was in error in holding to the contrary."

Except for this single legal proposition, appellants do not question the sufficiency of the record to support the finding of the Commissioner, affirmed by the trial court, that the lessors were claimant's employer, under the Workmen's Compensation Act. They claim that, regardless of other circumstances, the operation of the leased truck by claimant under the permit of the lessee makes claimant the lessee's employee, within the purview of the Workmen's Compensation Act.

█ The "borrowed servant" doctrine has been defined, in brief, as the rule that the general servant of one person may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such other person. However, such relation is merely constructive and not real and is actually a fiction resorted to by the courts to enable them, with greater ease and facility, to apply the law of negligence and especially the rule of respondeat superior. Some jurisdictions, including Iowa, have held such fiction, utilized in the law of negligence, has no place in the administration of a Workmen's Compensation Act. Elliott v. Wilkinson, 248 Iowa 667, 669, 81 N.W.2d 925, 926; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 633, 67 N.W.2d 549, 556, and citations; Muscatine City Water Works v. Duge, 232 Iowa 1076, 1084, 1085, 7

N.W.2d 203; Hoover v. Independent School Dist., 220 Iowa 1364, 264 N.W. 611; Knudson v. Jackson, 191 Iowa 947, 183 N.W. 391.

■ II. In their brief appellants "examine the historical development of the effect of the Interstate Commerce Commission Regulations for trucking operations"; point out that courts first began to analyze the impact of these regulations in the field of negligence; state that "the great majority of courts have held that there are duties, responsibilities and liabilities on the part of the owner of the Interstate Commerce Commission Permit" and "this same rule can be analogized to the Workmen's Compensation Acts, * * *."

If this statement means the great majority of courts have held the permit holding lessee rather than the lessor is liable for damage to the public from the negligence of the borrowed servant, it is incorrect. Nor do we agree such liability is analogous to liability to the borrowed servant for workmen's compensation. Iowa decisions holding the "borrowed servant" doctrine is not applicable in the administration of the Workmen's Compensation Act have been cited hereinbefore.

An article by Raymond A. Sloan, Jr., entitled, "Liability of Carriers For Independent Contractors' Negligent Operation of Leased Motor Trucks" will be published in Iowa Law Review, Volume 43, Summer of 1958. We acknowledge with thanks receipt of the galley proofs of this good article, prior to its publication. It cites many authorities in support of its conclusions. Under the subhead, "Employment Relationships of Truckers Generally", the article states:

"The borrowed servant question almost invariably arises when a contractor leases a machine to perform a certain job and 'furnishes' his employee to operate the machine. Despite the 'chaotic' status of the borrowed servant doctrine among the various jurisdictions, a vast majority of the decisions holds that the operator has continued in his general employment. Thus the lessor, rather than the lessee, incurs liability for negligence of the operator."

See Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501, and citations.

Under other subheads the article discusses the development

of Theories of Liability of Motor Carriers; Early Law, between 1920 and 1935; Restatement of Torts, section 428; the Effect of Legislation and Regulations; Liability Under "Owner's Responsibility" Statute; and Indemnity. These subheads indicate the complexity of the propositions involved, which, in itself, would practically forbid the drawing of the analogy suggested by appellants.

III. Appellants rely largely upon Brown v. L. H. Bottoms Truck Lines, 227 N. C. 299, 42 S.E.2d 71. There Brown leased his truck to L. H. Bottoms Truck Lines and contracted to operate it in interstate commerce for Bottoms, under Bottoms' franchise or permit. The court held a truck could be lawfully so operated only by those standing in the relationship of employees of such licensed carrier; that the operation of the truck was, in law, under the supervision and control of the licensed carrier; that an owner driving a truck leased to a licensed interstate motor carrier, which the owner himself had no license to operate, was an employee of the lessee within the meaning of the Workmen's Compensation Act, and that the lessee, by placing its own license plates on the leased truck, assumed such control of its operation as to defeat its plea of nonliability under the Workmen's Compensation Act for injury to the lessor-operator. This decision was followed by Roth v. McCord & Dellinger, 232 N.C. 678, 62 S.E.2d 64, and McGill v. Bison Fast Freight, 245 N.C. 469, 96 S.E.2d 438.

Appellants also cite Patton v. Patton, Mo., 308 S.W.2d 739, 747, in which the loaned driver of a leased unit, transporting explosives interstate was asphyxiated at a lodging place, at a prescribed stop. The decision states:

"The hauling of the explosives was under regulations of the Interstate Commerce Commission and the Department of Defense. Patton & Boyd [lessor] had no authority to transport explosives in interstate commerce, their equipment could be used therein only as one of the units of Tri-State [lessee], and it would appear to follow that a driver of a Patton & Boyd unit would operate as an employee of Tri-State while hauling the explosives involved." Citing Brown v. L. H. Bottoms Truck Lines, supra, 227 N. C. 299, 42 S.E.2d 71.

However, in Stroud v. Zuzich, Mo., 271 S.W.2d 549, in which claimant truck operator was an employee of the lessor furnished the lessee as an incident of the lease, that court held the lessor was liable for workmen's compensation because it did not appear claimant consented to a transfer from his general employer to the lessee.

In Jackson Trucking Co. v. Interstate Motor Freight System, 122 Ind. App. 546, 104 N.E.2d 575, and in Long v. Sims Motor Transport Lines, 124 Ind. App. 504, 117 N.E.2d 276, the appellate court of Indiana held the truck operator would be considered an employee of both lessor and lessee, under the Workmen's Compensation Act.

In Daniels v. Terminal Transport Co., 125 Ind. App. 28, 119 N.E.2d 554, the same court held the lessee alone responsible, stating it seemed inconsistent for the operator of a motor freight transportation line to execute written agreements with reference to drivers in order to satisfy the requirements of the Interstate Commerce Commission and then to ask courts to ignore their terms in cases under the Workmen's Compensation Law.

IV. The Opinion and Judgment Entry of the distinguished trial court recites:

"It is conceded that the recent case of Elliott v. Wilkinson, [248 Iowa 667, 81 N.W.2d 925, in which the lessor was required to pay workmen's compensation] would be controlling in this matter except for the effect of the Federal Interstate Commerce Act and the Interstate Commerce Commission regulations adopted pursuant thereto."

That claimant was injured in Illinois while operating a truck unit in interstate commerce. In argument the lessor in that case pointed out that the lessees "held the Interstate Commerce Commission permits and abided by that body's regulations * * *."

However, this was merely one of the factors pointed to by appellants in the cited case, as indicating the lessees were claimant's employer and it was not contended it established that status as a matter of law. The effect of the permit or regulations of the Interstate Commerce Commission was not mentioned in the decision of the court which affirmed the judgment against the lessor. Wilds v. Morehouse, 152 Neb. 749, 42 N.W.2d 649,

and Rantis v. Michicago Motor Express, 333 Mich. 73, 52 N.W.2d 602, are similar cases, in which the circumstances that claimant was operating the truck under the lessee's Interstate Commerce permit were mentioned but not discussed in the decisions, each of which held the lessee was not liable for workmen's compensation.

Miller v. Barnett, Okla., 285 P.2d 233, held the driver of the leased truck operated under state and federal certificates of operation as a common carrier was not by law or the rules of operation under certificates of the Interstate Commerce Commission made a servant of the lessee, within the purview of the Workmen's Compensation Law. The court considered but declined to follow Brown v. L. H. Bottoms Truck Lines, supra, 227 N. C. 299, 42 S.E.2d 71, stating that before a workmen's compensation award may be entered the relation of employer and employee must be established under the established definite rules.

Behner v. Industrial Commission, 154 Ohio St. 433, 441, 96 N.E.2d 403, 407, cites many authorities in support of a similar holding. It states: "It remains to be determined whether the Interstate Commerce Act had the effect of making Carter such an employee of the transfer company at the time of his death as would place him within the coverage of the Workmen's Compensation Act, notwithstanding the relationship in other respects was that of independent contractor."

In holding claimant was not an employee of the lessee company within the coverage of the Workmen's Compensation Act, the decision cites cases decided by federal courts, involving the same or allied questions within the Unemployment Compensation Act and the Social Security Act. See United States v. Mutual Trucking Co., 6 Cir., 141 F.2d 655; United States v. Silk, 331 U. S. 704, 67 S. Ct. 1463, 91 L. Ed. 1757. See also National Labor Relations Board v. Chauffeurs, etc., 7 Cir., 212 F.2d 216.

In Gibson v. Moore Motor Freight Lines, 246 Minn. 359, 362, 75 N.W.2d 212, 215, the argument of appellant lessor made reference to certain provisions of the lease similar to those pointed to by the lessors in the case at bar. In both cases the lessors relied mainly upon Interstate Commerce Commission

Regulations, Ex Parte No. MC-43, section 207.4. In the language of appellants in the case at bar:

"The question is whether or not defendant-appellee Ringle can evade and avoid the duties, responsibilities and liabilities it assumes by virtue of its Interstate Commerce Commission Permit, and in particular whether or not it can delegate its duties, responsibilities and liabilities to have 'exclusive possession, control and use of the equipment, and the complete assumption of responsibility in respect thereto * * *.' " (Section 207.4(4).)

In the Gibson case appellants contended, "that (1) by the terms of the lease, exclusive control of the driver, equipment, and trip were placed in the hands of * * * [the lessee], and hence the latter became the employer of Gibson; and (2) that, since § 207.4 required that all responsibility for the trip and equipment be in * * * [the lessee], such company must be held to have had control of Gibson to the extent of making him its employee."

The Gibson decision followed Turner v. Schumacher Motor Express, Inc., 230 Minn. 172, 41 N.W.2d 182, in holding the provisions of the lease did not make the lessee the employer of claimant within the purview of the Workmen's Compensation Act. It held also Interstate Commerce Commission regulation section 207.4 did not do so, stating at page 365 of 246 Minn., page 216 of 75 N.W.2d:

"Further, there is nothing in the regulation which attempts to define employer-employee relationship for workmen's compensation act purposes or suggests that the Interstate Commerce Commission is therein prescribing criteria by which the state courts may determine whether the *lessor,* or the *lessee,* in a lease covered by the regulation is the *employer* of a driver of a vehicle covered thereby. See American Trucking Assns. v. United States, 344 U. S. 298, 73 S. Ct. 307, 97 L. Ed. 337, where the purpose of this regulation [there held valid] is discussed. Even assuming that such power is vested in the commission, its failure to clearly manifest the intent to exercise it would seem to foreclose the possibility that the regulation in question would compel this court to adopt a view different from that expressed

in the Turner case. As stated in Schwartz v. Texas, 344 U. S. 199, 203, 73 S. Ct. 232, 235, 97 L. Ed. 231, 235: 'The exercise of federal supremacy is not lightly to be presumed.' "

The trial court held the relationship of employer and workman or employee, under the Workmen's Compensation Act, must be established by existing rules and is not dependent upon Interstate Commerce Commission rules or statutes. This accords, in general, with the theory of our previous decisions and with what appears to be the weight of the better reasoned authority elsewhere. Hence, the judgment is affirmed.—Affirmed.

GARFIELD, C. J., and WENNERSTRUM, LARSON, THOMPSON, PETERSON, and HAYS, JJ., concur.