JULIAN MARTIN, INC. et al *v.* INDIANA
REFRIGERATION LINES, INC. et al

77-239                                        560 S.W. 2d 228

Opinion delivered January 23, 1978
(Division II)

H. *David Blair*, of *Murphy, Blair, Post & Stroud*, for appellants.

*Wright, Lindsey & Jennings;* and *Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *Phillip Carroll,* for appellees.

JOHN A. FOGLEMAN, Justice. The Workmen's Compensation Commission awarded compensation to appellee Robert Lee Underwood on account of injuries suffered by him while driving a truck near Ft. Smith, Arkansas. The truck was owned by appellee White County Ready Mix, who leased it to appellant Julian Martin, Inc., who in turn leased it to appellee Indiana Refrigeration Lines, Inc., for a specific trip. Underwood was on this trip when he suffered a compensable injury. The only contention by appellant, on appeal, is that Indiana Refrigeration Lines was the employer of Underwood at the time and that appellant was not. We hold that the question was one of fact and that there was substantial evidence to support the commission's findings.

It was stipulated that, at the time of Underwood's injury, the truck was being operated pursuant to a trip lease to Indiana Refrigeration Lines, Inc. and under authority granted to that company by the Interstate Commerce Commission. Appellant's argument is two-fold. It contends that Indiana Refrigeration Lines was the employer because (1) it controlled the activities of Underwood under ICC regulations and (2) it collected and remitted to its insurance carrier premiums for workmen's compensation insurance coverage on appellant on this particular trip and should be estopped

from denying coverage. We do not consider either factor to control the status of Underwood as an employee of appellant as a matter of law, although there might be substantial evidentiary support for such a holding. But we are not concerned with the question whether there is support for a conclusion different from that reached by the commission. *Reynolds Mining Co. v. Raper*, 245 Ark. 749, 434 S.W. 2d 304; *Herman Wilson Lumber Co. v. Hughes*, 245 Ark. 168, 431 S.W. 2d 487. Our only concern is whether a fair-minded person could reach the conclusion the commission did reach upon the evidence submitted. If so, the evidence is substantial. *Franks v. Amoco Chemical Co.*, 253 Ark. 120, 484 S.W. 2d 689; *Plastics Research & Development Co. v. Goodpaster*, 251 Ark. 1029, 476 S.W. 2d 242; *Herman Wilson Lumber Co. v. Hughes*, supra.

Underwood was hired by Dan King, the sole proprietor of White County Ready Mix and the truck Underwood was driving. It was known to Underwood that the truck was leased to Julian Martin, Inc., because a sign painted on the door on each side of the truck so indicated. Underwood was told that he would receive his pay from Bob Killian, the "first driver" of the truck, who was paid by King on a percentage basis. The last pay received by Underwood was by check of White County Ready Mix. Killian did not accompany Underwood on the trip during which the injury occurred, and this was Underwood's first trip alone.

The drivers were expected to call appellant daily, so appellant would be advised as to what was going on. They customarily reported their location and how things were going. Whenever Killian and Underwood reached any destination, Killian would call appellant in Batesville for dispatch to another place to pick up cargo. Killian called appellant about destinations daily.

On the particular occasion in question, Underwood left Batesville with a load of chickens to be taken to Sioux City, Iowa, and was told by appellant to then go back to Glenwood, Iowa, to pick up a load of pork to be transported to Memphis. After unloading the chickens, Underwood went to Indiana Refrigeration Company in Sioux City, filled out a sublease or trip lease of the truck by appellant to Indiana

Refrigeration Lines, and was furnished that company's signs which he put on the sides of the truck, covering appellant's signs. He then went to Glenwood and picked up the load destined for Memphis. As usual, expense money for the truck was furnished by King and Underwood paid his personal expenses.

Underwood had previously taken his instructions from Killian. He had received his directions relating to the trip during which he was injured from Killian. After Underwood picked up the load at Glenwood, he was free to choose the best route to Memphis and to stop wherever and whenever he chose along the way. He was restricted as to the time he could drive during any 24-hour period and was required to keep a log of the trip by ICC regulations.

Underwood knew that the trip lease had been used on two occasions when the truck was not hauling commodities which were exempt from ICC regulation but, when hauling exempt commodities, the operation was always conducted under the lease to appellant. Killian was paid 30% of the compensation White County Ready Mix received in either instance, and presumably the same amount was paid to Underwood in either situation. Killian always paid the second driver, such as Underwood, from the percentage he was paid.

Under the trip lease arrangement between appellant and Indiana Refrigeration Lines, appellant was compensated by the load. Appellant received a settlement sheet from Indiana Refrigeration Lines showing a deduction for a workmen's compensation insurance premium from the compensation that would have otherwise been paid appellant. Such a deduction had been made on settlement sheets sent appellant by Indiana Refrigeration Lines over a period of six years. Appellant's settlement sheet with White County Ready Mix, which included the trip on which Underwood was injured and three other such trips, showed that $27.09 was deducted for workmen's compensation insurance premium from the amount remitted to White County Ready Mix, and it is admitted that appellant charged the owner of this truck for workmen's compensation insurance on some trips where appellant had subleased the owner's truck on a trip lease.

Appellant provides workmen's compensation coverage for drivers on some trip leases and on others, including those to Indiana Refrigeration Lines, premiums are deducted from the payment to appellant. In figuring the premium paid to its insurance carrier on its payroll, appellant does not include the payroll of drivers of trucks owned by or leased to it when deductions have been made for workmen's compensation insurance premiums by a sublessee such as Indiana Refrigeration Lines. The matter had been handled the same way on every such transaction, of which there were more than 75.

Dan King had never been told that a workmen's compensation premium would not be charged to him by appellant when one of his trucks was subleased to a third party by appellant. It was his understanding that appellant arranged for workmen's compensation coverage and billed him for it, and this was the way the matter had been handled as long as he leased trucks to appellant. King understood that when his truck was running for Indiana Refrigeration Lines, the premium was deducted by that concern and passed down to him. He did not understand that there would be two premiums or two deductions. King turned over tickets for gasoline purchased by his drivers to appellant and each ticket showed the name of the lessee and the amount of gasoline purchased.

The administrative law judge and the full commission found that appellant exercised a greater degree of control over Underwood than did Indiana Refrigeration Lines. This finding was based on the fact that the drivers called in to the appellant routinely for instructions as to where to pick up and deliver loads, the route to be taken and matters of that sort and that appellant retained the right to terminate the employment.

Appellant relies upon ICC regulations requiring that, in the leasing of equipment with drivers, the lease shall provide for the exclusive possession, control and use of the equipment and for the complete assumption of responsibility in respect thereto by the lessee, for the duration of the lease. Appellant is quite correct in its position that the right of control, and not its exercise, is a factor in determining whether the employer-

employee relationship exists. The lease required the lessor to provide the necessary personnel to operate the leased equipment, to pay the driver's salary, compensation coverage and all taxes based on payroll and to indemnify the lessee against any loss resulting from the injury or death of the driver. It provided for surrender of full control, possession and management of the leased *equipment* to the lessee during the term of the leases and required the *lessor* to operate the equipment as directed by lessee. It also provided that the lessor should generally determine the details and means of performing the services required by the lease, so long as they were in conformance with various regulatory requirements, the operating procedure and policy of the lessee and the specifications and requirements of the shipper.

Appellant's right of control over Underwood is demonstrated in the evidence. When Underwood first went to work, he filled out an application for employment on a form which was given him by Killian, and which he understood came from appellant's office. The president and major shareholder of appellant testified that he had the right to discharge Underwood if Underwood were to commit an infraction of appellant's policies. We should also point out that when Underwood was en route from Glenwood to Memphis, he encountered mechanical difficulties, which he reported to King. King directed him to' call appellant, who probably would know where needed repairs could be made in Kansas City, from whence Underwood called. When Underwood was unable to overcome the difficulties through procedures suggested by appellant, King instructed him to come through Little Rock where repairs would be made. He did take this route and his compensable injury was suffered while en route to Little Rock. Indiana Refrigeration Lines, Inc. was not consulted about this selection of route and took no part in the decision made.

We cannot agree that the ICC regulations made the driver of the truck the employee of the sublessee, Indiana Refrigeration Lines, as a matter of law. It cannot be said that by the terms of the lease, complete control of the driver was surrendered by appellant. Cases cited by appellant relating to vicarious liability of the lessee under a trip lease for

negligence of the driver have little, if any, bearing on the question of the status of the driver as an employee of the lessor in that lease. The word "employee" for workmen's compensation purposes is defined by statute to mean any person in the service of an employer under any contract of hire or apprenticeship. Ark. Stat. Ann. § 81-1302 (Repl. 1976). Control of the leased equipment does not operate as such complete control of the driver, as to make the driver the employee of the lessee as a matter of law, as appellant contends. *Turner v. Shumacher,* 230 Minn. 172, 41 N.W. 2d 182 (1950); *Hamilton v. M & M Leasing Co.,* 283 App. Div. 904, 130 NYS 2d 1 (1954).

There is no specific precedent in this state governing this particular relationship and there seems to be a split of authority among other states. We have a decided preference for those authorities holding that the question, when there is a lease of fully operated equipment for the transportation of cargo on the public highways, is one of fact. See *Coleman v. Ringle Truck Lines,* 249 Iowa 1133, 91 N.W. 2d 566 (1958); *Rantis v. Michicago Motor Express,* 333 Mich. 73, 52 N.W. 2d 602 (1952); *Turner v. Schumacher Motor Express,* supra; *Williams v. Solomon,* 13 A.D. 2d 159, 214 NYS 2d 928 (1961).

We do not agree that the doctrine of estoppel requires a different conclusion. If asserted by the claimant, the doctrine might well apply. But in this case, it seems that appellant would also be estopped on the theory it espouses, because it appears to us that appellant withheld workmen's compensation insurance premiums in its settlement with White County Ready Mix on this very trip, whether deliberately or through error. Be that as it may, the contract between appellant and Indiana Refrigeration Lines expressly required that appellant pay the driver's salary and compensation coverage and that appellant indemnify it against any and all claims of whatever kind or nature that might arise under the agreement. Dan King testified that it was his understanding with appellant that appellant would provide workmen's compensation coverage for the drivers of trucks he leased to appellant, and bill him for it and that this practice had been followed so long as he had been entering into truck lease agreements with appellants. The agent of Indiana Refrigeration Lines who arranged the trip lease testified that he

withheld for compensation coverage in order to make sure that it was paid by the lessor. A lessee of motor trucks may properly insure against the risk that drivers furnished by the lessor may be held to be its employees, and its doing so would not constitute a conclusive admission, as between the lessee and the lessor, that the driver was the lessee's employee or necessarily outweigh other evidence on the subject. *Williams v. Solomon,* supra.

The party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment. *Ford Motor Credit Co. v. The Exchange Bank & Trust Co.,* 251 Ark. 881, 476 S.W. 2d 208; *Arkansas National Bank v. Boles,* 97 Ark. 43, 133 S.W. 195. We do not find a basis for estoppel in favor of appellant.

Appellant relies upon *Phoenix of Hartford v. Coney,* 249 Ark. 447, 459 S.W. 2d 558, which was an action under Ark. Stat. Ann. § 81-1306 (Repl. 1960), by the insurance carrier of a prime contractor against a subcontractor, to recover the amount paid by the carrier on the claim of an employee of the subcontractor. The subcontractor defended on the basis of estoppel. We pointed out that where the insured employer's liability is based upon estoppel, or other equitable consideration, the estoppel would not automatically apply to an insurance carrier whose liability is to be determined under the workmen's compensation law. We do not consider *Coney* as controlling and do feel that, under the workmen's compensation laws, there was substantial evidence that appellant was liable for Underwood's claim as his employer.

We do not understand that appellant seeks any relief against White County Ready Mix, and we find no basis for such relief.

The judgment is affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.