TRANSPORT MOTOR EXPRESS, INC. *v.* DELORES J. SMITH, JAMES MICHAEL JESSEE, KENNETH WAYNE JESSEE, GINA RENEE JESSEE AND RISS & COMPANY, INC.

[No. 574S99.  Filed May 21, 1974.]

· *T. E. Cunningham, John T. Rocap, Rocap, Rocap, Reese & Young,* of counsel, all of Indianapolis, for appellant.

·. *F. Boyd Hovde, W. Scott Montross, Townsend, Hovde & Townsend,* of counsel, all of Indianapolis, for appellees Smith and Jessee. *David A. Steckbeck, William C. Moore, Steckbeck & Moore,* all of Indianapolis, for appellee Riss & Company.

ON PETITION TO TRANSFER

GIVAN, J.—On February 7, 1967, the decedent, James Willard Jessee, died as a result of accidental injuries received during his operation of a truck owned by Riss & Company, Inc. The question for decision in this case is whether or not Transport Motor Express, Inc. was also to be considered an employer of Jessee by reason of the fact he was operating a truck which had been leased by him as agent for Riss to Transport Motor Express, Inc. for the purposes of a single trip.

The plaintiffs below were Jessee's widow and his three minor chilrden, each of whom was his dependent at the time of his death.

· The opinion of the Court of Appeals which we are reviewing today was handed down December 4, 1972, and reported in 289 N.E.2d 737, 34 Ind. Dec. 42. In a prior opinion reported

in 279 N.E.2d 262, 29 Ind. Dec. 417, the Court of Appeals had returned this case to the Industrial Board stating that the Board's findings of fact were insufficient and directing that the Board make additional findings of fact to support its award and specific enough to permit the Court of Appeals "intelligently to review said award."

The Industrial Board, pursuant to the opinion by the Court of Appeals, submitted additional findings of fact. However, the Court of Appeals in the decision which we are now reviewing still contends that even these additional findings of fact submitted by the Industrial Board are insufficient for proper review. We disagree with the Court of Appeals and find that upon examining the findings of fact by the Industrial Board that those findings do, in fact, meet the standards which are set out in the Court of Appeals' decision and with which we agree.

The Court of Appeals has correctly stated the law, but has failed to apply that law to the facts in the case at bar. The amended findings of fact filed by the Industrial Board with the Court of Appeals, omitting caption and signatures, reads as follows:

"BE IT REMEMBERED, that on the 1st day of March, 1972, the Court of Appeals of Indiana (Second District) rendered a directive to the Full Industrial Board of Indiana, in which said directive the Full Industrial Board of Indiana was directed to certify to the said Court of Appeals finding of facts upon which the Award in said cause was based. In conformity with the said directive, the said Full Industrial Board of Indiana now makes the following finding of facts:

"On February 7, 1967, at approximately 3:45 A.M. in Will County, Illinois, plaintiff's decedent, James Willard Jessee, died as a proximate result of accidental personal injuries received by him on February 7, 1967, in Will County, Illinois.

"The injuries to James Willard Jessee causing his death occurred when he was crushed between the rear of a semi-trailer and the cab of a semi-trailer in Will County, Illinois.

"At the time of his death, James Willard Jessee was employed at an average weekly wage in excess of the maximum.

"James Willard Jessee was survived by his wife, Delores Jessee Smith, and three minor children, James Michael Jessee, born March 27, 1961; Kenneth Wayne Jessee, born August 10, 1962; and Gina Renee Jessee, born September 19, 1966, each of whom was wholly dependent upon James Willard Jessee at the time of his said death.

"Defendants Transport Motor Express, Inc. and Riss & Company, Inc. each had actual knowledge of the decedent's injuries and death on or about February 7, 1967.

"After being advised by Transport Motor Express, Inc. of the availability of material to be transported from Crane Naval Depot in Crane, Indiana, James Willard Jessee was sent on February 3, 1967, by Riss & Company, Inc. from McAlester, Oklahoma, to Terre Haute, Indiana, in Tractor No. 645 which was owned by J. & H. Leasing Corp. and permanently leased by it to Riss & Company, Inc.

"At the time James Willard Jessee was dispatched by Riss & Company, Inc. to Terre Haute, Indiana, it was intended that James Willard Jessee trip lease himself and his equipment to Transport Motor Express, Inc. and proceed from Terre Haute, Indiana, to Crane, Indiana, where he would load explosives which he would then transport to Joliet, Illinois.

"Riss & Company, Inc., at all relevant times, had no Interstate Commerce Commission or Public Service Commission authority to carry explosives in Indiana or between Crane, Indiana, and Joliet, Illinois.

"Transport Motor Express, Inc. at all times relevant had Interstate Commerce and Public Service Commission of Indiana operating authority to carry explosives from Crane, Indiana, to Joliet, Illinois.

"Riss & Company, Inc. had no terminal or place of business in Terre Haute, Indiana, or Crane, Indiana, or Joliet, Illinois. Transport Motor Express, Inc. had a terminal in Terre Haute, Indiana, and Joliet, Illinois.

"On or about February 5, 1967, James Willard Jessee reported to the freight terminal of Transport Motor Express, Inc. in Terre Haute, Indiana, and, on behalf of Riss & Company, Inc., entered into the trip lease agreement. He then acquired from Transport Motor Express, Inc. placards which were placed on the tractor he was driving and which showed Transport Motor Express, Inc. as the lessee of the equipment and set forth the Interstate Commerce Commission numbers and Public Service Commission of Indiana numbers authorizing the travel to and from Crane, Indiana,

and the authority of Transport Motor Express, Inc. to transport the explosives in question.

"James Willard Jessee then drove the tractor and trailer which were the subject of the trip lease to Crane, Indiana, where the trailer was loaded with explosives.

"James Willard Jessee's destination under the trip lease was the freight terminal of Transport Motor Express, Inc. in Joliet, Illinois, at which point the trip lease was to terminate.

"At the time of his death as aforesaid, James Willard Jessee was still enroute to the terminal of Transport Motor Express, Inc. in Joliet, Illinois, and had not completed the trip called for by said lease.

"While operating under the said trip lease, James Willard Jessee was required by Transport Motor Express, Inc. to follow a prescribed route of travel and to keep a log of his activities which was furnished to Transport Motor Express, Inc.

"During the trip lease, Transport Motor Express, Inc. had the right to stop the driver and equipment and to require replacement of either the driver or equipment for violation of ICC or PSCI rules and regulations.

"Plaintiff, Delores Ann Jessee, individually and on behalf of her minor children, James Michael Jessee, Gina Renee Jessee and Kenneth Wayne Jessee, entered into a compromise settlement agreement in Texas with Riss & Company, Inc. by and through its insurer, Security Mutual Casualty Company, whereby Riss & Company, Inc., paid Delores Ann Jessee the sum of $5200.04 on her own behalf, plus $500.00 for reimbursement of funeral expenses, and $5515.04 for and on behalf of the minor children, said compromise having been approved by the Industrial Accident Board of the State of Texas on July 14, 1967, Cause No. F62408, Claim No. 97229.

"The liability of defendant Transport Motor Express, Inc. to plaintiffs was not an issue in the proceedings hereinbefore described and such liability was not adjudicated by that proceeding.

"At the time of the injuries causing his death on February 7, 1967, decedent James Willard Jessee was an employee of both Transport Motor Express, Inc. and Riss & Company, Inc., and he was within the scope and course of his said employment.

"Both defendants should pay in equal portions the statutory funeral expense up to the maximum $750.00.

"Plaintiffs are entitled to a recovery against defendants, and each of them, on plaintiffs' Form 10 application; filed February 5, 1969.

"Defendant Riss & Company is entitled to a credit against its liability hereunder for the sums it paid plaintiffs pursuant to the order of the Industrial Accident Board of the State of Texas described in a previous finding hereof."

The Court of Appeals takes the position that the above findings of fact are fatally defective because they fail to resolve the dispute between the parties as to the "factual inferences" to be drawn from the trip lease agreement when that agreement is considered with reference to what took place before and after its execution.

The Court of Appeals has used the terminology "factual inferences" when they are actually referring to legal conclusions which may be drawn from the facts as stated by the Industrial Board.

The Court of Appeals contends the Industrial Board did not resolve the "factual inferences" which TMX now contends should have been concluded from an examination of the lease instrument. TMX contends the lease is a "mere fiction," a device made necessary by what TMX calls "some archaic regulation of ICC." The attempt by some public carriers to present such an argument is not new in our courts.

In *Daniels* v. *Terminal Transport Company, Inc. and Borinstein* (1954), 125 Ind. App. 28, 119 N.E.2d 554, the Court of Appeals responded to an identical argument. In that case the Court stated at page 34:

"It seems inconsistent for the operator of a motor freight transportation line to execute written agreements with reference to drivers and the employment thereof under their control in order to satisfy the requirements of the Interstate Commerce Commission and then to ask courts to ignore the terms of such agreements when they are considered for the purpose of determining whether or not a driver of a truck is an employee under the Workmen's Compensation law."

The question before us is whether or not there are sufficient facts set out in its findings by the Industrial Board upon which

the Court of Appeals or this Court can render a judicial determination as to the law applicable to such facts. When we examine the facts filed by the Industrial Board we see that they find:

1. That the decedent was dispatched by Riss with the intent to trip lease himself and his equipment to TMX.

2. That Riss at that time had no Interstate Commerce Commission or Public Service Commission authority to carry explosives in Indiana over the distances in this case.

3. That TMX had Interstate Commerce and Public Service Commission authority for the cargo and the route involved in this case.

4. That Riss had no terminal in Terre Haute and that TMX did have a terminal in Terre Haute and one in Joliet, Illinois.

5. That on February 5, 1967, the decedent reported to the Terre Haute terminal of TMX where he entered into a trip lease agreement on behalf of Riss, pursuant to which he acquired TMX placards which were placed on the vehicle. Those placards showed TMX to be the lessee and carried the Interstate Commerce Commission numbers and Public Service Commission numbers.

6. The decedent then drove the truck which was subject to the trip lease agreement to Crane, Indiana, where it was loaded with explosives.

7. Decedent's destination under the trip lease agreement was the TMX terminal in Joliet, Illinois, at which point the trip lease was to terminate.

8. At the time of his death, decedent was enroute from Crane, Indiana, to the TMX terminal in Joliet, Illinois, and had not completed the trip called for by the terms of the lease.

9. While operating under the trip lease agreement, the decedent was required by TMX to follow a specific route and to keep a log of his activities which was furnished to TMX.

10. During the trip lease TMX had the right to stop the driver and equipment and to require replacement of either the driver or equipment for any violation of ICC or PSC rules and regulations.

In the case of *Jackson Truck Co.* v. *Interstate M.F. System* (1952), 122 Ind. App. 546, 104 N.E.2d 575, the Court of Appeals, after reciting almost an identical set of facts as above set out, at page 557 stated the following:

> "In the light of the above facts, we are constrained to hold that the decedent was, in fact, an employee of *both* the appellant Jackson and the appellee Interstate. As stated by this court in the case of *Jones* v. *Furlong, Admx.* (1951), 121 Ind. App. 279, 293, 97 N.E.2d 369, 375:
>
> > " 'It is not inconsistent for the same person to act as an employee of one person in certain aspects of a transaction and as an employee of another in a different part of the business. *McDermott's Case* (1933), 283 Mass. 74, 77, 186 N.E. 231, and cases cited.'
>
> "Neither is it inconsistent that, where two employers so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers and that both will be jointly chargeable with the responsibilities of his employment." See also *Long* v. *Sims Motor Transport Co. et al.* (1954), 124 Ind. App. 504, 117 N.E.2d 276.

As we perceive this case, if there are any facts which have been omitted by the findings of the Industrial Board, they would be merely incidental. It is difficult to conceive of any fact which could be added to those recited which would change the legal conclusions found by the Board. As pointed out by the Court of Appeals in *Daniels, supra,* neither this Court nor the Court of Appeals should concern itself with "facts" which had been presented and argued by the trucking company that the ICC regulations are archaic, and that a lease is not, in fact, a lease so long as ICC requires such leases and so long as they are executed and used in the manner described by the findings of fact by the Industrial Board.

In this case the parties are, as a matter of fact, joint employers of the driver of the vehicle. We recognize that as

stated in previous decisions, cases of this nature must be decided upon their facts, and that different arrangements might be made in different leases. However, the facts recited in this case are quite ample for the application of existing law.

Transfer is, therefore, granted, and the decision of the Industrial Board is sustained.

Arterburn, C.J., and Hunter, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

DeBruler, J.—There are three elements missing from these findings of facts, the presence of which are necessary to render the findings sufficiently specific to permit a rational and properly limited court review.

1. The findings do not identify which facts produced the Board's conclusion that James Jessee was an employee of Transport Motor Express at the time of the accident. The findings of facts, are merely a list of all facts found, stated in chronological sequence.

2. The findings do not include factual inferences, which a reading of them indicates, had to have been made in order for the Board to have reached its determination that a relationship of employment as defined by the Indiana Workmen's Compensation Act of 1929, IC 1971, 22-3-6-1, being Burns § 40-1701, existed between James Jessee and Transport Motor Express. There is no finding, for example that the lease agreement reached between Riss & Company, James Jessee, and Transport Motor Express was in reality a contract of hire, or that James Jessee was to be paid by Transport Motor Express for his services.

3. The findings do not reveal to the reader the factual theory underlying its determination that James Jessee was an employee of Transport Motor Express. The significance which the Board attributed to the various findings is not stated. The majority opinion is erroneous in formulating its own factual theory and then identifying the facts which the

Court deems supportive of a successful application of that theory. This is the function and the work of the Board and not a court on review.

The Court of Appeals correctly remanded the case to the Board for further specification of facts.

For the reasons stated above, and for the additional reason that I do not consider this case to fall within the framework of our transfer jurisdiction since the Second District of the Court of Appeals has not decided the case on the merits adversely to either party, I cannot concur in the disposition of this case made by the majority.

Prentice, J., concurs.

NOTE.—Reported at 311 N.E.2d 424.