**STEEL TRANSPORT, INC.,**
**Appellant–Defendant,**

v.

**Charles HYATT, Appellee–Plaintiff.**

**No. 93A02–0005–EX–302.**

Court of Appeals of Indiana.

Dec. 6, 2000.

Bruce J. Alvarado, Konstantine G. Orfanos, Orfanos & Alvarado, LLC, Indianapolis, Indiana, Attorneys for Appellant.

Douglas A. Mulvaney, Stutsman, Mulvaney & DeBoer, Elkhart, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant, Steel Transport, Inc. (Steel), appeals the Order of the Full Worker's Compensation Board of Indiana

1. DES is not a party to this appeal.

(Board), affirming the Single Hearing Member's Award that Charles Hyatt (Hyatt) is entitled to benefits under Ind. Code § 22–3–3–31 as a joint employee of Steel and DES of Indiana, Inc. (DES),[1] and that Hyatt is also entitled to an award under Ind.Code § 22–3–4–13 due to Steel's failure to maintain any worker's compensation insurance coverage for Hyatt.

We affirm.

### ISSUES

On appeal Steel raises two issues for our review, which we restate as:

1. Whether the Board erred in ordering Steel and DES, as joint employers, to contribute equally to the payment of Hyatt's worker's compensation benefits under Ind.Code § 22–3–3–31.

2. Whether the Board erred by ordering Steel to pay double compensation and damages under Ind.Code § 22–3–4–13, for its failure to provide worker's compensation insurance coverage to Hyatt.

### FACTS AND PROCEDURAL HISTORY

On March 31, 1993, Hyatt suffered an accidental injury to his leg arising out of and in the course and scope of his joint employment with Steel and DES. Hyatt required medical treatment as a result of his work-related injury. However, neither DES nor Steel provided Hyatt with medical treatment, and as a result, all medical treatment that Hyatt received on his own constituted statutory medical expenses which are not in dispute. Therefore, on June 2, 1994, Hyatt filed a claim for worker's compensation benefits in the State of Michigan. However, his claim was denied because the Michigan Worker's Compensation Bureau did not have jurisdiction. Hyatt subsequently filed an Application for Adjustment of Claim on January 9, 1995, with the Worker's Compensation Board of Indiana.

At the time of his accident, Hyatt was operating under a signed employment contract with DES, which provided that Hyatt was an employee of DES on lease to Wyatt Trucking. The employment agreement further stated that as an employee of DES, Hyatt was responsible for delivering goods, products and/or produce to distributors and/or dealers as directed by DES. Furthermore, for approximately one year before the accident of March 31, 1993, Hyatt drove exclusively for Steel on individual trip leases. Steel is a common carrier that carries products mainly for major steel mills. Steel leased the equipment to transport the products from an independent contractor who would in turn supply a driver. Wyatt Trucking was one of the companies that Steel leased equipment from on either a trip lease agreement on a single trip basis or on a long-term permanent lease. A trip lease is a lease that is for a specific single trip that begins at one location and ends at another. The evidence is undisputed that at the time of his accident, Hyatt was operating under a trip lease entered into between Wyatt Trucking as the lessor/owner of the equipment and Steel as the lessee. Because Hyatt was an employee on lease to Wyatt Trucking, Wyatt Trucking supplied Hyatt as a driver to Steel.

Therefore, in the year prior to his accident, Hyatt would contact Steel to determine whether there was a load available. Steel would then notify Hyatt where to pick up a load and where to deliver it. Hyatt would then pick up his tractor and trailer from Wyatt Trucking, pick up a load and sign the trip lease with Steel, and then deliver the load. At the time of Hyatt's accident, Wyatt Trucking owned the tractor and trailer that he drove, and Hyatt's only contact with Wyatt Trucking was when he picked up the tractor and trailer to deliver a load for Steel. Wyatt Trucking made no arrangements for the delivery of Hyatt's loads and exercised no control over how he performed his job.

On October 21, 1998, a hearing was held before a Single Member of the Worker's Compensation Board of Indiana. The relevant issues for determination by the Worker's Compensation Board were:

1. At the time of his accidental injury, was Plaintiff an employee of any of the following Defendants: Steel Transport, Inc., DES of Indiana, Inc., Wyatt Trucking?

2. If Plaintiff was employed by more than one of the Defendants, what contribution toward the payment of Plaintiff's compensation should be made pursuant to I.C. 22-3-3-31?

3. If the Board finds that Plaintiff was an employee of one or more Defendants, was he covered as an employee under their respective worker's compensation insurance policies as required by the Worker's Compensation Act?

4. If one or more Defendants failed to comply with I.C. 22-3-5-1, 22-3-7-34(a), or 22-3-7-34(b), is Plaintiff entitled to an award under I.C. 22-3-4-13?

(R. 320-321).

At the hearing, Hyatt testified as to the accident and his injuries. In addition, the deposition of Warren Ambler (Ambler) was admitted as evidence in this case by agreement of the parties. At the time of Hyatt's accident on March 31, 1993, Ambler was employed by Steel as the director of safety. Furthermore, the deposition of Wayne Wickard (Wickard) was admitted by agreement of the parties. At the time of Hyatt's accident, Wickard was the president of DES, and he testified that DES operates a payroll processing company for customers. Wickard further testified that at the time of Hyatt's accident, DES had contracts with truck drivers and signed agreements. Wyatt Trucking would locate the drivers, DES would process the payroll for Wyatt Trucking, and DES had signed agreements with each employee driver. Wickard further testified that under the agreements in this case, the driv-

ers were employed by Steel. In addition, the parties stipulated and the Board found that no medical bills had been paid and all medical bills were still outstanding at the time of the hearing. Steel also did not at any point turn Hyatt's claim into their worker's compensation insurance company and did not pay any worker's compensation benefits to Hyatt.

On March 9, 1999, the Single Member of the Board ordered Steel and DES to pay Hyatt's statutory medical expenses. The Board ordered that Hyatt was entitled to payment of 65.57 weeks of temporary total disability payments at the rate of $304.67 per week for a total of $19,977.21 and to an award of permanent impairment in the amount of $3,150.00 based on an 18% impairment of his left leg below the knee. The Board further concluded that Hyatt was in the joint employ of both DES and Steel and the award was to be apportioned equally between them under Ind.Code § 22-3-3-31. Finally, the Board concluded that Hyatt was entitled to an award under Ind.Code § 22-3-4-13 due to the failure of DES and Steel to maintain any worker's compensation insurance coverage for Hyatt's accident.

Subsequently, on April 14, 2000, following a hearing and review by the Full Worker's Compensation Board of Indiana on March 13, 2000, the Board affirmed the Single Hearing Member's decision. Steel now appeals. Additional facts will be supplied when necessary.

## DISCUSSION AND DECISION
### Standard of Review

Steel faces a deferential standard of review in its attempt to challenge the Board's findings. Upon appeal from a finding of the Worker's Compensation Board, the Court of Appeals is bound by the Board's findings of fact, and may not disturb its determination unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind. Ct.App.1995). Instead, it is the duty of the Board, as the trier of fact, to make findings that reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. *K-Mart Corp. v. Morrison*, 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied*. In reviewing a decision of the Board, the Court of Appeals reviews the record to determine if there is any competent evidence of probative value to support the Board's findings. We then examine the findings to see if they are sufficient to support the decision. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses. *Id.* We employ a two-tiered standard of review. We will review the evidence in the record to see if there is any competent evidence of probative value to support the Board's findings and then examine the findings to see if they are sufficient to support the decision. *Id.* We will consider only the evidence most favorable to the award, including any and all reasonable inferences deducible from the proven facts. *Neidige v. Cracker Barrel*, 719 N.E.2d 441, 443 (Ind.Ct.App. 1999), *reh'g denied*. Therefore, to prevail upon its appeal, Steel is required to show that there was no probative evidence from which the Board might reasonably conclude as it did. Because the record contains competent evidence to support the Board's claim, Steel's appeal must fail.

### I. *Ind.Code § 22-3-3-31*

First, Steel argues that it should not be liable for any of Hyatt's work related injuries under the Indiana Worker's Compensation Act. Specifically, Steel contends that the Board erred by ordering an award to Hyatt, finding Steel and DES joint employers of Hyatt and equally responsible for the payment of Hyatt's worker's compensation benefits under Ind.Code § 22-3-3-31. We disagree.

Ind.Code § 22-3-3-31 provides for the apportionment of a worker's compensation award when an employee is in the joint service of two or more employers. Specifically, Ind.Code § 22-3-3-31 states:

Whenever any employee for whose injury or death compensation is payable under IC 22–3–2 through IC 22–3–6 shall at the time of the injury be in the joint service of two (2) or more employers subject to IC 22–3–2 through IC 22–3–6, such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employees; provided, however, that nothing in this section shall prevent any reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation.

Although Steel argues that the Board erred in apportioning Hyatt's award equally between it and DES, Steel concedes that it and DES were joint employers of Hyatt. However, Steel claims that it did not have a wage liability to Hyatt, and therefore, the Board erred by applying Ind.Code § 22–3–3–31 to apportion Hyatt's award equally between Steel and DES. Steel contends that the Board's finding and conclusion number 67 misstates the facts:

67. It is further found that it appears from the evidence that both Steel Transport and DES of Indiana participated equally in the payment of Plaintiff's wages. Steel Transport paid Wyatt Trucking for each load. DES of Indiana then paid Plaintiff. Absent evidence to the contrary, the Board determines that under I.C. 22–3–3–31, DES of Indiana and Steel Transport are each liable for one-half of the liability in this case.

(R. 332). Specifically, Steel argues that the evidence reveals that once a delivery was made under a trip lease and the required paperwork was received, a check would be issued to Wyatt, the owner of the equipment. Further, Steel claims that its payment was based upon a percentage of the revenues for the load, and it had no control or knowledge of the wages that would be paid to Hyatt for his delivery of a load under a trip lease. Therefore, Steel contends that the evidence indicates that it provided no wages directly to Hyatt because it paid a fee based on a percentage of revenues to Wyatt, as the owner of the equipment, and DES paid a salary to Hyatt pursuant to a service agreement between DES and Wyatt.

However, the Board made the following findings and conclusions with respect to Steel's liability for apportionment of Hyatt's benefits under Ind.Code § 22–3–3–31:

57. It is further found that under I.C. 22–3–3–31, an employee can be found to be in joint employment of two or more employers. In that case, the liability of the employers is determined in relation to the portion of wages that they pay the employee.

\* \* \*

59. It is further found that the Indiana Court of Appeals in *Sharp v. Bailey,* Ind.App., 521 N.E.2d [sic] 368 (1988), also held that a driver who drives under a trip lease which complies with Interstate Commerce Regulations, assigns a driver the route, required him to keep a log, gave the lessee the right to replace the driver for violation of ICC or PSCI rules, and used the trip lessee's ICC and PSCI permit numbers, is considered an employee of the lessee for purposes of the worker's compensation laws.

60. It is further found that based on the evidence, it is the conclusion of the Board that Plaintiff was in the joint employ of both DES of Indiana and Steel Transport.

\* \* \*

62. It is further found that the undisputed evidence also leads to the conclusion that Plaintiff was an employee of Steel Transport for purposes of Indiana Worker's Compensation under the *Sharp v. Bailey* decision. Plaintiff at the time of his accident was delivering a load under the provisions of a trip lease which complied with Interstate Com-

merce Regulations. It assigned Plaintiff his pick up and delivery locations, required him to keep a log, [and] gave Steel Transport the right to replace Charles Hyatt. Additionally, he used Steel Transport's ICC and PSCI permit numbers during his trip.

* * *

66. It is further found that Wyatt Trucking is not an employer of Charles Hyatt. Other than supplying the leased equipment, it played no role in the relationship among Plaintiff, Steel Transport, and DES of Indiana; it exercised no control over how Plaintiff performed his job.

(R. 330–332).

Because Steel concedes that Hyatt was in the joint employ of both DES and itself, we must therefore determine whether there was probative evidence for the Board to conclude that Hyatt was an employee of Steel for purposes of Indiana Worker's Compensation under *Sharp,* and thus whether Steel and DES are equally liable for payment of Hyatt's worker's compensation benefits under Ind.Code § 22–3–3–31.

In *Sharp,* John Bailey, who was driving a truck which he owned and had leased to a carrier, collided with Billy Sharp, who was driving a truck owned by Adams Trucking, which had leased the truck to the same carrier. *Sharp,* 521 N.E.2d at 369. Bailey brought a civil action against the carrier, Sharp, and Adams Trucking. Both leases contained provisions which: (a) required the lessors, Bailey and Adams Trucking, to maintain worker's compensation insurance for the drivers; (b) provided that the equipment would be used exclusively in the lessee's (the carrier's) business; (c) required the drivers to comply both with the lessee's rules and all rules and regulations of the ICC; (d) entitled the lessee to have any driver replaced whom it determined was unqualified; and (e) required the lessors to indemnify the lessee for losses arising from accidents. *Id.*

We found that summary judgment should have been granted for the carrier because Bailey was an employee of the carrier, and, as such, worker's compensation was his exclusive remedy. *Id.* at 370. This court stated that a seriatim examination of the factors traditionally considered in such an analysis was unnecessary because our supreme court's decision in *Transport Motor Express, Inc. v. Smith,* 262 Ind. 41, 311 N.E.2d 424 (1974), controlled the case. In *Transport,* our supreme court found that a driver's widow and dependent children were entitled to recover workmen's compensation benefits from a carrier. The driver was operating under a "trip lease" with the carrier, which lease, apparently in order to comply with ICC regulations, assigned the driver a route, required the driver to keep a log, and gave the lessee the right to replace the driver for violation of ICC or PSCI rules or regulations. *Id.* at 426. The driver also used the carrier's ICC and PSCI permit numbers. *Id.*

In upholding the industrial board's findings determining that the driver was an employee of the carrier, the *Transport* court quoted with approval from *Daniels v. Terminal Transport Co.* 125 Ind.App. 28, 119 N.E.2d 554 (1954). In that passage, the *Daniels* court stated that it would be inconsistent to permit a carrier to execute written agreements covering the employment of drivers and control of them required by ICC regulations and later allow it to dispute those terms in a proceeding to determine whether the driver is an employee under workmen's compensation law. *Transport,* 311 N.E.2d at 424.

In the case at hand, Wyatt, as the lessor, entered into a trip lease with Steel, as the lessee, and Hyatt was denoted as the driver/lessor. Pursuant to the lease, Wyatt leased a tractor and two trailers to Steel for transportation from South Bend, Indiana to Jackson, Michigan. In addi-

tion, Wyatt supplied to Steel a driver in Hyatt, for which Steel agreed to pay Wyatt seventy-five percent (75%) of the freight rate revenues received by Steel. The lease further provided that:

1. GENERAL PROVISIONS

B The Lessee agrees to lease the equipment described on the reverse side hereof from the Lessor for the purpose of transporting freight thereon within the scope of its operating authority and the Lessor agrees to lease said equipment to the Lessor for said transportation.

C The transportation to be performed pursuant to this agreement shall be conducted exclusively in the name of the Lessee.

D This lease agreement is entered into by the parties for the purpose of conducting a single movement under the authority of the Lessee from origin to destination.

\* \* \*

2 THE LESSEE CARRIER AGREES

A To accept exclusive possession, control, use and responsibility for the equipment leased pursuant to this agreement at the time and place specified on the reverse side hereof, and, concurrent with acceptance of such equipment, to accept all legal liability as owner thereof to the public authority, while the equipment is operated under this agreement.

B To assign proper identification placards to the power vehicle leased to it, while such vehicle is in possession and under its direction and control.

(R. 187).

Furthermore, Hyatt testified that for approximately one year before the accident of March 31, 1993, he drove exclusively for Steel, usually on individual trip leases. Hyatt further testified that virtually all of his contact regarding the individual loads he hauled was with Steel. Hyatt would contact Steel to determine whether there was a load available, and Steel would notify him when and where to pick up the load and where to deliver the loads. Steel required Hyatt to maintain a mileage logbook and after he delivered his load, he was to turn in his logbook along with the trip paperwork in order to get paid. Finally, the evidence reveals that Wyatt owned the tractor and trailers that Hyatt drove, and Hyatt testified that his only contact with Wyatt was when he picked up the tractor and trailers. Wyatt did nothing to make arrangements for his loads and had no control or knowledge of how he performed his jobs. Thus, Hyatt would receive instructions from Steel of where and when to pick up a load, he would then pick up the tractor and trailer from Wyatt, and then pick up a load and sign the trip lease with Steel.

We therefore hold, as we did in *Sharp,* that the lease, in combination with ICC regulations, gave Steel both the right and the duty to exercise control over Hyatt such that he was an employee of Steel.

■ However, Steel argues that in order for Ind.Code § 22–3–3–31 to apply here, there must be probative evidence to conclude that it had wage liability to Hyatt. With respect to Steel's wage liability to Hyatt, the Board made the following findings and conclusion:

35. It is further found that Warren Ambler testified that Mr. Hyatt was operating under his trip lease at the time of this injury. Under the leasing arrangement, Steel Transport would pay Wyatt Trucking a percentage of the revenue on a per trip basis.

\* \* \*

41. It is further found that the deposition of Wayne Wickard was admitted by agreement of the parties. Wayne Wickard was president of DES of Indiana, Inc., at the time of Plaintiff's accident. Wickard testified that DES of Indiana

operates as a payroll processing company for customers.

42. It is further found that at the time of Plaintiff's accident, DES of Indiana had contracts with drivers of trucks and signed agreements. The employees were found by Wyatt Trucking, and DES of Indiana did the payroll processing for them. They would have signed agreements with each of the employees.

43. It is further found that according to Wayne Wickard, under the agreements in this case, the drivers were employed by Steel Transport. Wyatt Trucking would fax DES of Indiana a sheet once a week showing all of their drivers and how much to pay them, and then they would issue the paychecks.

(R. 327–328).

Furthermore, the trip lease between Wyatt and Steel provided that Steel pay to Wyatt 75% of the freight rate revenues received by Steel. Moreover, the Record reveals that DES would then process the payroll for Wyatt and pay Hyatt. Thus, although Hyatt received his payment directly from DES and Steel did not directly pay Hyatt, the source of the revenue paid to Hyatt originated from Steel. Therefore, because we find competent evidence in the Record to support the Board's conclusion, and Steel does not provide us with evidence to the contrary, we must affirm the Board's decision to equally divide the responsibility of paying Hyatt's worker's compensation benefits between Steel and DES.

## II. *Ind.Code § 22–3–4–13*

Steel argues that the Board erred by concluding that it did not maintain worker's compensation insurance for Hyatt. Specifically, Steel contends that the Board erred by awarding Hyatt damages under Ind.Code § 22–3–4–13. We disagree.

---

**2.** Ind.Code § 22–3–5–1, Ind.Code § 22–3–7–34(a) and Ind.Code § 22–3–7–34(b) provide that every employer is required to insure and keep insured its liability and to furnish the

In relevant part, Ind.Code § 22–3–4–13 provides:

(f) In an action before the Board against an employer who at the time of the injury to or occupational disease of an employee had failed to comply with IC 22–3–5–1 or IC 22–3–7–34(a) or IC 22–3–7–34(b)[2], the board may award to the employee or the dependents of a deceased employee:

(1) compensation not to exceed double the compensation provided by this article;

(2) medical expenses; and

(3) reasonable attorney fees in addition to the compensation and medical expenses.

Ind.Code § 22–3–4–13(f).

Steel takes issue with the Board's conclusion that neither it nor DES maintained worker's compensation insurance coverage on Hyatt. Specifically, Steel argues that the Board's finding and conclusion number 68 is erroneous:

68. It is further found that it is undisputed that neither Steel Transport nor DES of Indiana maintained worker's compensation insurance coverage on Plaintiff. The representatives of both Steel Transport and DES of Indiana both testified and in written correspondence confirmed they did not provide worker's compensation insurance for Plaintiff. There being no evidence to the contrary, the Board now concludes that Steel Transport and DES of Indiana did not maintain the worker's compensation insurance required by I.C. 22–3–5–1, 22–3–7–34(a), or 22–3–7–34(b).

(R. 333).

However, Steel argues that the Record contains evidence that both it and DES maintained worker's compensation insurance coverage on Hyatt. Specifically, Steel notes a Certificate of Insurance,

---

worker's compensation board with proof of its financial ability to pay the worker's compensation when due.

whereby Affiliated Insurance Consultants, Inc., was the producer of the insurance policy and Transamerica Insurance Company afforded worker's compensation insurance coverage to Steel from April 8, 1992, until April 8, 1993, to include "employees of DES of IN, Inc. while operating equip. leased to Steel Transport, Inc. by Wyatt Trucking...." (R. 18). Furthermore, Steel cites to its Response to Defendant DES of Indiana/Gulick Truck Parts' Petition to Join as evidence that it maintained worker's compensation insurance coverage on Hyatt at the time of the accident. Specifically, Steel's Response states that it was insured by Transamerica Insurance Company at the time of the accident on March 31, 1993.

Nevertheless, with respect to the issue of whether Steel maintained worker's compensation insurance coverage on Hyatt at the time of the accident, the Board made the following findings of fact and conclusions of law:

28. It is further found that with respect to the long-term lease, Steel Transport required that the driver provide a certificate of worker's compensation coverage. With respect to trip lease drivers, they did not require any type of certificate as far as worker's compensation insurance coverage.

29. It is further found that the Certificate of Insurance from 4–8–92 to 4–8–93, in effect at the time of the Charles Hyatt's accident, issued by Transamerica, was admitted by agreement of the parties and was attached to Warren Ambler's deposition as Exhibit 3. Affiliated Insurance Consultants was the insurance agent for Steel Transport in 1992 and 1993 and provided Steel Transport's worker's compensation insurance coverage. Under the description of operations locations and vehicles and stated [sic] that the coverage provided covered employees of DES of Indiana operating equipment leased to Steel Transport by Wyatt Trucking.

30. It is further found that Warren Ambler testified that the language in the certificate wasn't accurate. He described it as a typographical error. He stated that the certificate should have read that it only covered employees under permanent lease to Steel Transport. He testified that it did not cover Charles Hyatt as Charles Hyatt was on a trip lease not a permanent lease.

* * *

37. It is further found that Warren Ambler testified that they made no deduction for worker's compensation payments for the Plaintiff. In a letter dated May 20, 1993, which was admitted by agreement, he stated Steel Transport did not provide worker's compensation coverage.

38. It is further found that Warren Ambler testified that Steel Transport did not receive a certificate of worker's compensation insurance or verify Plaintiff's worker's compensation coverage at the time of the trip lease with the Plaintiff. They did not apply DES of Michigan's certificate of insurance on the load. At the time of Plaintiff's accident on March 31, 1993, Warren Ambler testified that there was no certificate of worker's compensation insurance obtained from Wyatt Trucking, DES of Indiana, or Plaintiff before the trip on March 31, 1993.

* * *

69. It is further found that since both Steel Transport and DES of Indiana failed to comply with I.C. 22–3–5–1, 22–3–7–34(a), or 22–3–7–34(b), they are liable for damages under I.C. 22–3–4–13. The Board now concludes that Plaintiff is entitled to an award under I.C. 22–3–4–13. The Board gives counsel for Plaintiff 14 days from the date of the award to present additional evidence with respect to the amount of compensation, medical expenses, and the amount

of attorney's fees to allow the Board to calculate the award.

(R. 325–327, 333).

Although Steel argues that the Board's conclusion that Steel did not maintain worker's compensation insurance coverage on Hyatt is erroneous, Steel fails to provide evidence to the contrary. Thus, the undisputed evidence reveals that Hyatt was not covered by worker's compensation insurance provided by Steel at the time of his accident.

First, Ambler testified on behalf of Steel that Steel provided worker's compensation insurance coverage only for drivers operating under permanent leases. Ambler further testified that Hyatt, at the time of his accident, was operating under an individual trip lease and that anyone driving under a trip lease would not be covered by Steel's worker's compensation insurance coverage.

Next, Ambler testified that when Steel obtained its worker's compensation insurance coverage policy, it specifically told the insurance company that it would only apply to permanent leases because Steel had no control over trip lease equipment operating on a single-trip basis. (R. 110).

Finally, in a letter from Ambler to Wickard, dated May 20, 1993, and admitted by agreement, Ambler stated that:

> ... It was our understanding with Floyd Wyatt that workers' compensation coverage for him [Hyatt] was being provided by your company [DES] in accordance with your letter of June 15, 1992 by Traverlers [sic] Insurance Company.
>
> * * *
>
> ... The lessor, Wyatt Trucking, did not pay any workers' compensation premiums to this company [Steel] for the load on March 31st, and therefore, no premiums were paid to our insurance carrier. Accordingly, your belief that Transamerican should accept the claim is incorrect.

> In my discussion of the matter with Floyd Wyatt, it is his position that he was or should have been paying your company for workers' compensation insurance coverage for Charlie Hyatt.... It is our position that no workers' compensation insurance coverage was to be provided by this company [Steel] for your employee, Charlie Hyatt, and therefore, the exclosures forwarded with your May 18th letter are being returned for your handling.

(R. 267).

■ We therefore hold that the Board's conclusion that Steel failed to maintain worker's compensation insurance coverage on Hyatt was not erroneous. As the Record reflects, Ambler, Steel's own representative, testified that Steel did not cover Hyatt under any policy of worker's compensation while he was operating under a trip lease at the time of the accident. Thus, because there is probative evidence to support the Board's conclusion and Steel failed to provide evidence to the contrary, the Board's decision finding Steel liable for damages under Ind.Code § 22–3–4–13 and concluding that Hyatt is entitled to an award under Ind.Code § 22–3–4–13 is affirmed.

## CONCLUSION

Based on the foregoing, we conclude that the Board properly ordered Steel and DES, as joint employers, to contribute equally to the payment of Hyatt's worker's compensation benefits under Ind.Code § 22–3–3–31, and the Board properly ordered Steel to pay double compensation and damages under Ind.Code § 22–3–4–13, for its failure to provide worker's compensation insurance coverage to Hyatt.

Affirmed.

BARNES and BAILEY, JJ., concur.