Patricia HAVLIN, Appellant–Plaintiff,

v.

WABASH INTERNATIONAL,
Appellee–Defendant.

No. 93A02–0205–EX–388.

Court of Appeals of Indiana.

March 24, 2003.

Publication Ordered April 24, 2003.

George C. Patrick, Crown Point, IN, Attorney for Appellant.

Keith R. Fafarman, Gambs Mucker & Bauman, Lafayette, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Patricia Havlin (Havlin) appeals the order of the Full Worker's Compensation Board of Indiana (Board) affirming the Single Hearing Member's (Hearing Member) finding and related award concerning Havlin's permanent partial impairment (PPI) rating.

We affirm in part, and reverse in part.

### ISSUES

Havlin raises two issues on appeal, which we restate as follows:

1. Whether the Board's findings and subsequent award demonstrate a disregard for the stipulation entered into by the parties during the subject hearing;

2. Whether Havlin's state and federal due process rights were violated by the Board's findings.

### FACTS AND PROCEDURAL HISTORY

On July 20, 1995, Wabash National Corporation (Wabash) hired Havlin. On August 30, 1995, Havlin suffered an accidental injury to her back in the course and scope of her employment at Wabash while placing decals on a semi-trailer. On October 23, 1995, Havlin filed her application for adjustment of claim with the Board against Wabash. On July 17, 1998, the Board issued a determination in favor of Havlin, and awarded her temporary total disability (TTD) benefits representing nearly twenty-eight weeks of compensation for the period of August 30, 1995 to March 11, 1996. The Board also ordered Wabash to provide Havlin with conservative care for her injury as ordered by Dr. Donald Kucharzyk in his March 31, 1997 report. Wabash appealed. On January 25, 1999,

the Full Board affirmed the Hearing Member's decision.

Thereafter, Havlin petitioned the Board for an emergency hearing for the purpose of obtaining further TTD benefits from Wabash, along with the payment of ongoing medical care. On May 17, 2000, an emergency hearing was held. On July 17, 2001, the Board issued the following Findings of Fact with regard to the May 17, 2000 hearing:

1. That the history of the injury as provided by [Havlin] includes her working for [Wabash] for approximately 30 days. Prior to that, [Havlin] had been employed for 13 years by Imperial Wall Covering, a job which, according to[Havlin], involved considerable lifting, bending, etc.

2. That [Havlin's] work history, that included 13 years of heavy lifting at Imperial Wall Covering, created [Havlin's] resultant pre-existing degenerative back condition: Spondylitis. It was this pre-existing degenerative back condition that produced segmental instability which produced excessive motion and shear across the disc space that created the condition that then allowed the injury of [Havlin's] back at L4–5 to occur.

3. That, as a result of the August 30, 1995 incident, [Havlin] had an MRI of the lumbar spine performed on September 19, 1995. This MRI revealed isolated L4–5 degenerative disease.

4. That on July 21, 1998, [Havlin] had another MRI. It again revealed single-level disease at L4–5 with a small central disc herniation, slightly decreased disc height and signal without any direct nerve compression. Although other mild degenerative changes were noted throughout the lumbar spine, none were identified at the L5–S1 level.

5. That a CT discogram was reviewed in August 1998, again, three years after the injury at L4–5. The CT discogram evidenced single level disease at L4–5. No disease was noted at L3–4 or at L5–S1.

6. That the distinct, second back injury at L5–S1 was first detected on or about May 17, 1999, nearly four years after [Havlin] was diagnosed as having her non-work-related degenerative back condition, spondylitis, and the original injury at L4–5.

7. That based upon [Havlin's] prior work history and her pre-existing degenerative back condition, spondylitis, the injury at L4–5 is the only injury that resulted from [Havlin's] working at [Wabash]. [Havlin's] working at [Wabash] did not cause [Havlin's] pre-existing spondylitis. The internal disc disruption identified at L5–S1 in May 1999 was not related to the work-related injury of August 1995.

8. That after the injury of August 1995, there were three objective imaging studies, including a CT discogram, that revealed isolated disease at the L4–5 level. Only the injury at L4–5 arose out of [Havlin's] employment at [Wabash]. [Havlin] underwent a single-level L4–5 posterior decompression and interbody fusion using RAY cages.

9. That the general recuperative period in which [Havlin] would be disabled is six months postoperatively.

10. That [Havlin's] injury at L4–5 and the October 1998 procedure result in [Havlin's] entitlement to a worker's compensation permanent partial impairment rating. However, this PPI rating is limited to a rating based upon her injury at L4–5 only and not her pre-existing spondylitis and subsequent injuries at L3–4 or L5–S1. Although [Havlin] is totally disabled, her total disability is based upon her pre-existing condition, with

[Wabash] only responsible for the injury at L4–5.

(Appellant's App. p. 2). In its award, the Board ordered Wabash to pay additional TTD benefits to Havlin for the time period from July 14, 1998 through April 28, 1999, as well as to pay for medical care and treatment for her L4–5 injury "prior to and including April 28, 1999." (Appellant's App. p. 3). The Board also determined that Havlin "is due no TTD after April 28, 1999." (Appellant's App. p. 3). Further, the Board ordered that "[Wabash] is responsible for a reasonable permanent partial impairment rating for the isolated injury at L4–5. The parties are ordered to exchange medical documentation concerning this PPI rating so as to resolve this matter." (Appellant's App. p. 3).

Havlin sought review of the Hearing Member's decision. On April 8, 2002, the decision was affirmed by the Board.

Havlin now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Stipulation of Issues*

■ Havlin contends that the Board disregarded a stipulation entered into by the parties during the hearing. Specifically, Havlin asserts that the Board's finding regarding Havlin's entitlement to a worker's compensation PPI rating exceeds the scope of the parties' stipulation as well as the evidence both sides introduced at the hearing. Unfortunately, the cases utilized by Havlin in her argument involve the resolution of issues through the stipulation of facts. In the case at hand, the parties stipulated to the issues, not to the facts, and these issues were not resolved prior to the hearing. For this reason, we find that Havlin's argument lacks a desired cogency.

Nonetheless, we note that "stipulation" in this context refers to "a voluntary agreement between opposing parties concerning some relevant point." BLACK'S LAW DICTIONARY 1427 (7th ed.1999). Here, the "relevant point" being the issues to be tried to the Board. Thus, the stipulation limited the parties to submitting and the Hearing Member to considering only evidence relevant to the stipulated issues. *See* Ind. Trial Rule 16. On review, we are able to determine compliance with such stipulation by reviewing the sufficiency of the Board's decision in light of the stipulation.

■ In reviewing a decision of the Worker's Compensation Board, we employ a two-tiered standard of review. *Steel Transport, Inc. v. Hyatt*, 740 N.E.2d 552, 555 (Ind.Ct.App.2000), *trans. denied*, 761 N.E.2d 413 (Ind.2001). We first review the record to determine whether there is competent evidence of probative value to support the Board's findings. We then examine the findings to determine whether they are sufficient to support the decision. *Id.* Our review of the Board's decision is deferential, in that we are bound by the Board's findings of fact and may not disturb its determination unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Id.* We do not reweigh the evidence or assess the credibility of the witnesses. *Id.* We consider only the evidence most favorable to the award, including any and all reasonable inferences of the proven facts. *Id.*

At the beginning of the May 17, 2000 hearing, the following stipulation was made:

> THE HEARING MEMBER: Okay. Do we have a stipulation as to what the issues are?
>
> HAVLIN COUNSEL: We're here on our continuing request for temporary total disability benefits and a determination to have medical bills paid.

383

THE HEARING MEMBER: Is that accurate?

WABASH COUNSEL: Yes, Your Honor.

(Transcript p. 4). The record is replete with references by both parties and the Hearing Member to the stipulation and the desire to leave the issue of a PPI rating or permanent total disability for a separate hearing. Consequently, the record is devoid of any evidence regarding Havlin's qualification for a PPI rating or permanent total disability.

Nevertheless, as stated above in its order dated July 17, 2001, the Board included Finding of Fact Number Ten, which states in pertinent part:

That [Havlin's] injury at L4–5 and the October 1998 procedure result in [Havlin's] entitlement to a worker's compensation permanent partial impairment rating. However, this PPI rating is limited to a rating based upon her injury at L4–5 only and not her pre-existing spondylitis and subsequent injuries at L3–4 or L5–S1. Although [Havlin] is totally disabled, her total disability is based upon her pre-existing condition, with [Wabash] only responsible for the injury at L4–5.

(Appellant's App. p. 3). Subsequently, Finding of Fact Number Ten became the basis of a portion of the Board's award to Havlin, which states in pertinent part:

[Wabash] is responsible for a reasonable permanent partial impairment rating for the isolated injury at L4–5. The parties are ordered to exchange medical documentation concerning this PPI rating so as to resolve this matter.

(Appellant's App. p. 3). We have already determined that the record contains no evidence with regard to the PPI issue. Accordingly, we find that the Board's Finding of Fact Number Ten and the portion of the award related to assignment of

a PPI rating not only exceed the scope of the parties stipulation, but are not based upon any evidence of probative value, and must therefore be reversed. *See Steel Transport, Inc.,* 740 N.E.2d at 555.

■ Havlin further contends that the Board's failure to comply with the parties' stipulation is reversible error. Alternatively, Wabash argues that, where the Board's decision is consistent with the parties' stipulation, the decision must be upheld. We agree with Wabash.

To the extent that the remaining valid findings and conclusions support the judgment, the erroneous finding and conclusion are superfluous and are not fatal to the judgment. *Amrhein v. Eden,* 779 N.E.2d 1197, 1206 (Ind.Ct.App.2002). Although Finding of Fact Number Ten is clearly erroneous, we find that the evidence in the record that is favorable to the judgment clearly supports the remaining Findings of Fact Numbers One through Nine. Those findings, in turn, support the first two portions of the Board's award addressing continuing TTD benefits and medical care that state as follows:

IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Worker's Compensation Board of Indiana that there be awarded Plaintiff as against Defendant Wabash temporary total disability from July 14, 1998 through April 28, 1999. Plaintiff's average weekly wage was $412.40. Plaintiff's TTD rate is, therefore, $274.93. The total amount due TTD for this period is, therefore, $11,350.68. The Plaintiff is due no TTD after April 28, 1999.

IT IS FURTHER ORDERED that Defendant Wabash is responsible for Plaintiff's care and treatment for her L4–5 injury prior to and including April 28, 1999, the end date of the post-operative

recovery period for the L4–5 injury and surgery.

(Appellant's App. p. 3). We further find that no portion of the Board's above-cited award is based upon erroneous Finding of Fact Number Ten. Therefore, Finding of Fact Number Ten is superfluous to the Board's remaining findings and not fatal to the remaining award. *See Amrhein,* 779 N.E.2d at 1206. Consequently, the Board's decision, less Finding of Fact Number Ten and the portion of the award relating to Havlin's PPI rating, is affirmed. *Id.*

### III. *Due Process Violation*

Finally, Havlin contends that the Board's disregard of the parties' stipulation and subsequent finding regarding Havlin's entitlement to a PPI rating violated her state and federal due process rights. Specifically, Havlin argues that the Board ruled on the PPI issue without first giving the parties notice and an opportunity to present evidence on the issue.

The record clearly indicates that both parties and the Hearing Member understood that the permanency of Havlin's injury and her PPI rating were the subject of a separate hearing. As discussed above, we have already reversed Finding of Fact Number Ten and the portion of the award pertaining to Havlin's PPI rating. Therefore, we need not address Havlin's due process issue.

### CONCLUSION

We conclude that the Board's Finding of Fact Number Ten and the related portion of the award exceed the scope of the parties' oral stipulation and are therefore reversed. Because Findings of Fact Numbers One through Nine support the remaining award, we further conclude that

this portion of the Board's decision must be affirmed.

Affirmed in part, and reversed in part.

BAKER and MATHIAS, JJ., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on March 24, 2003, marked Memorandum Decision, Not for Publication;

Comes now the Appellant, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein that the opinion involves a factual issue of unique interest and substantial public importance, as stipulations are increasingly being employed in proceedings before the Worker's Compensation Board; that this trend will likely continue as the Board has expressed its desire that stipulations be utilized in order to dispose of proceedings expeditiously and with the least possible expense to the parties and the State. The Appellant alleges that the public would be served by additional case law delineating the scope and effect of stipulations in this context.

The Court having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on March 24, 2003, marked Memorandum Decision, Not for Publication, is now ordered published.