**OLIVER & IVERSON a/k/a O&I Transport, Inc., Appellant–Defendant,**

v.

**Donald W. HONEYCUTT, Appellee–Plaintiff.**

No. 93A02–0302–EX–132.

Court of Appeals of Indiana.

Nov. 19, 2003.

Clark W. Holesinger, Portage, IN, Attorney for Appellant.

Irving M. Rosenberg, Hesch, Rosenberg, Roberts & Sherry, LLC, Mishawaka, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

O&I Transport, Inc. ("O&I") appeals from the decision of the full Worker's Compensation Board affirming the single hearing member's decision that Donald Honeycutt was entitled to benefits under to the Worker's Compensation Act. The sole issue O&I presents for our review is whether the Board properly determined that Honeycutt was an employee of O&I.

We reverse and remand.

O&I is a carrier of products which entered into a contract with Jeff Tiell, who agreed to supply trucks and drivers for O&I's business. On April 24, 2001, Honeycutt was employed by Tiell to drive one of the trucks which Tiell leased to O&I. On that day, Honeycutt accepted a pick-up order of five steel coils through the O&I dispatcher and drove his truck to a Pro-Met facility in Chicago. At the ProMet facility, Honeycutt was informed that the truck would be loaded with a forklift from the side. While assisting the forklift operator in loading the skids containing the steel coils, Honeycutt's right thumb was pinched either by a skid or a 2X4 which

Honeycutt was using. His thumb was amputated at the first knuckle.

Thereafter, Honeycutt filed an application for adjustment of his claim against O&I, Tiell, and a third party, Owners Operators Resource Center, which was eventually dismissed from the claim. A hearing was scheduled for October 16, 2001; however, neither O&I nor Tiell appeared. The single hearing member entered a default judgment against O&I and Tiell. O&I subsequently filed a motion requesting that the single hearing member reopen the case. That motion was granted. Following a second hearing in which O&I presented evidence, the single hearing member found that the facts were similar to those of this court's decision in *Steel Transport, Inc. v. Hyatt*, 740 N.E.2d 552 (Ind.Ct.App.2000), *trans. denied*, and that it was controlling. The single hearing member determined that Honeycutt was an employee of O&I and that it was equally responsible with Tiell for benefits due Honeycutt under the Worker's Compensation Act.

The Worker's Compensation Act contemplates that one worker may simultaneously have two employers. *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001). An employee will be considered an employee of both employers when the employers associate themselves together so that both are in direct control of the employee and the employee is accountable to both. *Id.* Determining whether an employee-employer relationship exists is ultimately a question of fact. *Id.*

In reviewing a decision of the Worker's Compensation Board, we employ a two-tiered standard of review. *Havlin v. Wabash Int'l*, 787 N.E.2d 379, 382 (Ind.Ct. App.2003). We review the record to determine if there is competent evidence of probative value to support the Board's findings and then determine whether the

findings support the decision. *Id.* We are bound by the Board's findings of fact and may not disturb the decision unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Id.* We do not reweigh the evidence or assess the credibility of the witnesses. *Id.* However, when the question before this court is primarily a legal question, we do not grant the same degree of deference to the Board's decision. *Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 266 (Ind.1998). The law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions. *Id.*

Because the single hearing member found that *Steel Transport* was the controlling precedent in this case, we begin by analyzing this court's decision in *Steel Transport* and the law upon which it relied. In *Steel Transport*, the injured claimant, Hyatt, was a truck driver who was employed by DES. DES, in turn, provided drivers to Wyatt Trucking. Wyatt Trucking would then lease a truck and driver to Steel Transport, a common carrier. At the time of Hyatt's accident, Steel Transport and Wyatt Trucking had entered into a trip lease in which Wyatt Trucking agreed to provide Hyatt to drive one of its trucks to transport product for Steel Transport. The Worker's Compensation Board determined, based in part upon this court's decision in *Sharp v. Bailey*, 521 N.E.2d 368 (Ind.Ct.App.1988), that Hyatt was an employee of Steel Transport at the time of his accident. *Steel Transport*, 740 N.E.2d at 556–57.

Upon review, this court relied upon the decision in *Sharp* and determined that the Board was correct in determining that Hyatt was an employee of Steel Transport. Specifically, this court stated, "We therefore hold, as we did in *Sharp*, that the lease, in combination with ICC regulations,

gave Steel [Transport] both the right and the duty to exercise control over Hyatt such that he was an employee of Steel [Transport]." *Id.* at 558. The ICC—Interstate Commerce Commission—regulations of which this court spoke were recognized by this court in *Daniels v. Terminal Transport Co., Inc.,* 125 Ind.App. 28, 119 N.E.2d 554 (1954), *trans. denied.*

In *Daniels,* a truck driver was injured while repairing a flat tire on the truck or trailer he was driving. The Worker's Compensation Board determined that Daniels was an independent contractor and that his injuries were thus not compensable. This court was then called upon to review the decision of the Board to determine whether Daniels was an employee of Terminal Transport Co. In so doing, this court reviewed the lease which had been entered into between Daniels's business partner and Terminal Transport Co. This court noted that the lease stated that Daniels was an employee of Terminal Transport Co. and designated him as a lease driver to satisfy the requirements of the ICC. 125 Ind.App. at 33, 119 N.E.2d at 557. It was further noted that specific directions for the control of the driver on the trip were set forth in the lease, which conformed to the ICC regulations. *Id.* This court then determined that under the terms of the lease and also in the acts and relationships of the parties in the transportation of goods from Indiana to Florida that circumstances did not exist which would establish an independent contractor relationship. 125 Ind.App. at 34, 119 N.E.2d at 557. Further, this court stated, "It seems inconsistent for the operator of a motor freight transportation line to execute written agreements with reference to drivers and the employment thereof under their control in order to satisfy the requirements of the Interstate Commerce Commission and then to ask courts to ignore the terms of such agreements when they are considered for the purpose of determining whether or not a driver of a truck is an employee under the Workmen's Compensation law." *Id.*

In *Transport Motor Express, Inc. v. Smith,* 262 Ind. 41, 311 N.E.2d 424 (1974), our Supreme Court was called upon to review a fact situation similar to that discussed above. In so doing, our Supreme Court quoted approvingly the language from *Daniels* which is cited above. 262 Ind. at 46, 311 N.E.2d at 427. In upholding the decision that the injured driver was to be considered an employee of the trucking company, our Supreme Court stated, "As pointed out by the Court of Appeals in *Daniels* . . . neither this Court nor the Court of Appeals should concern itself with 'facts' which had been presented and argued by the trucking company that the ICC regulations are archaic, and that a lease is not, in fact, a lease so long as [the] ICC requires such leases and so long as they are executed and used in the manner described by the findings of fact by the Industrial Board." 262 Ind. at 48, 311 N.E.2d at 428.

Based upon these cases, the decision of the single hearing member and the Board would seem to be correct. Nonetheless, a reading of the current version of the Federal Motor Carrier Safety Regulations, which have replaced the ICC regulations discussed above, reveal that those cases no longer reflect a correct interpretation of the regulations. In 1992, the ICC regulations were amended. As discussed in the Federal Register, 49 C.F.R. § 1057.12 was amended effective August 23, 1992. 57 Fed.Reg. 17,519 (July 24, 1992). The changes to § 1057.12 added part (c)(4), which reads:

"Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver

provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 11107 and attendant administrative requirements."

The current version of this regulation is now found at 49 C.F.R. § 376.12(c)(4) (2003). It is identical except that the reference to 49 U.S.C. 11107 has been changed to 49 U.S.C. 14102. Per this clarification in the regulations, it is clear that it is proper to look at the surrounding circumstances affecting the relationship between the driver and the common carrier. Additionally, no longer are courts and the Worker's Compensation Board bound to the determination that if a lease which is entered into meets the requirements of the leasing regulations as established by the Federal Motor Carrier Safety Administration that it is conclusive proof that the injured driver was an employee of the common carrier. Rather, we are to look to the factors which are traditionally applied by the fact-finder when determining whether an employee-employer relationship exists.

Our Supreme Court has recognized the most important of the factors to be: (1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. *GKN Co.*, 744 N.E.2d at 402. Further, the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employee-employer relationship. *Id.* at 403. Nonetheless, that factor is not dispositive. *Id.* Additionally, the factors should be weighed against each other as part of a balancing test as opposed to a mathematical formula in which the majority wins. *Id.* at 402.

 Unfortunately, we are unable to review the Board's determination as to whether the evidence supports a conclusion that Honeycutt was an employee of O&I under the seven relevant factors mentioned above. It is the Board's duty, as the trier of fact, to enter findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's findings. *Van–Scyoc v. Mid–State Paving*, 787 N.E.2d 499, 506 (Ind.Ct.App.2003). The specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or the ultimate factual question before the Board. *Id.* In this case, the findings of the Board were sufficient for review under what it perceived to be the correct interpretation of the law. Nonetheless, the findings are insufficient for review under the appropriate legal standard.[1] Consequently, we remand this cause to the Board to enter new findings of fact.

We reverse the decision of the Worker's Compensation Board and remand for further proceedings not inconsistent with this opinion.

FRIEDLANDER, J., and RILEY, J., concur.

---

1. We note that the findings which were entered that addressed some of the relevant factors for consideration under the appropriate standard were shaded by the analysis relied upon by this court in *Sharp* and *Steel Transport*. Upon remand, the Board should review the findings already made in light of the factors enumerated herein.